Vincent A. Lupiano, J.
The plaintiff insurance company seeks a judgment declaring that a policy of insurance issued by it to the defendants Hudson Properties, Inc., Samuel Parnés doing business as Park Realty Co., Marvin L. Goidell and Joseph Dubowsky doing business as Dumar Management Co., provides no coverage for certain losses which occurred on January 20, 1957. The other named defendants, 334 West 28th St., Inc., and La Valdotaine Mutual Aid Society, are being sued as claimants herein, having sued the assureds in another action; their instant default is legally insignificant since pertinent findings and conclusions are not necessary for the ultimate disposition of this action.
The policy, a standard form of liability insurance, was issued to the owner, lessee, and the managing agent of premises 337 West 27th Street, Manhattan, New York City, who, for purposes herein, will be referred to collectively as ‘ ‘ The Assureds ’ ’. The essential question here concerns itself with the coverage provided for property damage losses. Pertinently, the policy, in basic part, provides:
‘ ‘ Coverage B —Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined.”
The insuring agreement, aforesaid, is qualified by exclusion clause “ L ” of the policy and read as follows:
‘ ‘ Exclusions
‘ ‘ This policy does not apply:
* * *
“ (L) under coverage B, with respect to division 1 of the Definition of Hazards, and under division 3 except with respect to operations performed by independent contractors, and under coverage D, to any of the following insofar as any of them *965 occur on or from premises owned by or rented to the named insured and injure or destroy buildings or property therein and are not due to fire: (1) the discharge, leakage or overflow of water or steam from plumbing, heating, refrigerating or air-conditioning systems, standpipes for fire hose, or industrial or domestic appliances, or any substance from automatic sprinkler systems, (2) the collapse or fall of tanks or the component parts or supports thereof which form a part of automatic sprinkler systems ”.
Although there are other phases of coverage provided under the policy of insurance, the crucial question turns upon property damage losses.
It is the plaintiff’s contention that exclusion “ L ” excludes all property damage sustained as a result of the collapse or fall of a water tank forming a part of the sprinkler system in the insured premises. The defendants’ answer is a general denial, with an affirmative defense essentially of an estoppel nature. Plaintiff’s contention has merit; however, the action cannot be determined on such basis only since the defense juxtaposed has definitive potential. The essential facts, which ultimately resolve the matter, in hand with the law, are:
On Sunday, January 20, 1957, a water tank containing about 30,000 gallons of water, atop the premises 337 West 27th Street, collapsed and fell upon the roof there, causing it to break through the roof and side wall of the building with resultant and considerable damage; first, to property belonging to or in the custody of tenants within the building insured; second, to the building premises adjacent thereto. Promptly thereafter, the defendants notified the plaintiff of the accident. On January 28 and 29,1957, Jack Greenfest, the insurance company’s investigator, made separate reports based on his investigation of January 28, 1957. These reports were received by the plaintiff on January 29 and 30, 1957. In the report dated January 28, 1957, Greenfest stated: “I wasn’t concerned with the P.D. at the moment, which I could do nothing with anyway; besides coverage would be a factor.” (Italics mine.) Continuing from the same report: “ A detailed report of this accident will follow in a few days. I cannot go into every aspect of it now. Suffice it merely to say that a 30,000 gallon sprinkler tank [italics his] on the roof of assured’s building collapsed [italics mine], causing considerable damage not only to the premises itself but to several tenants in the building (that is, property). Also some damage was caused to two or three adjoining properties.”
The report dated January 29, 1957, which described, by way of diagram, the tank, its supports, the roof and the various floors *966 of the building, alerted the plaintiff that “ on Sunday morning, January 20 (11-30) the 30,000 gallon water tank on the roof of assured’s premises collapsed, leaving a mess of twisted steel [italics his] and debris on the roof. The roof caved [italics his] in causing considerable damage to the occupant of the eighth floor loft. Thousands of gallons of water poured through entering the 8th, 7th, 6th, and 5th floor lofts — at least that is all we know of at this moment.” The tenants of these floors are listed' therein. In this report, Greenfest refers to papers tó be submitted: a copy of the contract between “ The Assureds ” and the service company which “ services the sprinkler system of which the tank is part
The investigator then requested “ The Assureds ” to forward all claim letters to the plaintiff and the plaintiff did receive, promptly, many claim letters, including summonses and complaints, transmitted by “ The Assureds ”, all of which referred to the accident of January 20,1957, and, in the main part, alluding to the collapse of the water tank. Saliently, no investigation was made other than the single visit by the investigator on which he separately reported January 28 and 29,1957; no investigation was made concerning the extent, or negligent cause, if any, of the damage to the premises; the tenants ’ damage, or that of the adjacent premises. No inventory was taken of the damaged merchandise belonging to tenants and others, nor was anything done about salvage — all this despite the pronounced manifestation of multiple asserted and potential claims emanating from a major casualty.
On April 12, 1957, the defendant ‘1 Assureds ’ ’ received the following letter dated April 10, 1957 (Pltf’s Ex. 7), from the plaintiff:
Registered: R.R.R. April 10, 1967
NOTICE OF RESERVATION OF RIGHTS
Hudson Properties, Ine.
& Samuel Pames [sic] d/b/a
Park Realty Go.
11 Park Place
New York, New York.
Re: File No. 25874
Policy No.: 47-51914
Accident Date: 1/20/57
Claimants: See attached schedule
Dear Sirs:
The undersigned hereby acknowledges receipt of the claim letters and the summonses and complaints (as reflected on the annexed schedule which is made a part hereof) for property damage arising out of the above designated occurrence.
*967 This is to advise you that we shall continue the investigation of this occurrence without the waiver or surrender on our part of our right to disclaim liability to you and to others by reason of the provisions of the aforesaid policy of insurance.
Pursuant to the express terms of the aforesaid policy of insurance, namely Paragraph (1) of the ‘ Exclusions, this policy does not apply * * * (with respect to property damage) to any of the following insofar as any of them occur on or from premises owned by or rented to the named insured and due to fire: (1) the discharge, leakage or overflow of water or steam from plumbing, heating, refrigerating or air-conditioning systems, standpipes for fire hose, or industrial or domestic appliances, or any substance from automatic sprinkler systems, (2) the collapse or fall of tanks or the component parts or supports thereof which form a part of automatic sprinkler systems’.
There is no question that the aforesaid claims and suits for property damage are based upon the collapse of one of the sprinkler tanks located on the roof of the premises on or about the 20th day of January, 1957.
Therefore, of necessity, we are compelled to take the position that this occurrence does not come within the insurance coverage provided for in the aforesaid policy of insurance.
Furthermore, the Public Service Mutual Insurance Co. reserves the right to discontinue its investigation and defense, if any, upon giving you reasonable notice thereof.
The acceptance by you of this Notice of Reservation of Rights shall not be deemed a waiver or surrender on your part of any of the rights which you claim under the policy.
Kindly acknowledge receipt of this Notice of Reservation of Rights.
Yours very truly,
PUBLIC SERVICE MUTUAL
INSURANCE COMPANY
By.............................
Robert D. Foglia
Legal Dept.
RDF/jy
cc.:
Danzig, Rieders & Wolper,
32 Cliff Street
New York 38, New York.
Multiple claims and lawsuits were scheduled and made a part of this notice. Significantly, before receipt of this letter, the plaintiff had given ‘ ‘ The Assureds ’ ’ no indication that it would reserve its rights on the grounds of noncoverage or on different basis for disclaimer. Moreover, from the time the above letter was received to the time the summons and complaint in this action was served, “ The Assureds ” continued to forward other claim letters and summonses and complaints to the plaintiff, which the latter accepted.
As previously noted, no investigation of any kind, except that of January 28,1957, was conducted either before April 10,1957, or afterwards, respecting pending lawsuits or the multiple *968 asserted claims; nor was any request made by the plaintiff to “ The Assureds ” that they conduct their own investigation, or assume their own legal defense. Under exclusion (L) of the policy no coverage is afforded to “ The Assureds ” (certainly with respect to property damage losses within the insured premises) arising out of the accident of January 20,1957. Yet, the affirmative defense is legally sound and, if established, would bar the plaintiff from asserting that it is not liable under said policy. Hence, on the foregoing factual basis, the following queries will be considered for disposition of the matter at hand:
1. Has the plaintiff by its conduct, with certain knowledge of the physical factors surrounding this accident, effectively waived or estopped itself from asserting nonliability?
2. What is the effect of the so-called ‘1 Reservation of Rights ’ ’ letter of April 10,1957 ?
3. Does the exclusion clause also apply to property not located on the premises ?
At the outset we must emphasize that insurance companies hold a position of public trust and “ every consideration of public policy demands that insurance companies should be required to deal with their customers with entire fairness and frankness.” (Brink v. Hanover Ins. Co., 80 N. Y. 108, 113.) And when plaintiff stated in its letter of April 10, 1957, that “ there is no question that the aforesaid claims and suits for property damage are based upon the collapse of one of the sprinkler tanks located on the roof of the premises on or about the 20th day of January, 1957 ”, the plaintiff knew, because of sufficient availability of physical evidence following Greenfest’s inspection and reports, or then should have known, without “ question”, that the cause of the accident was one for which the defendants were not covered under the policy. Certainly, plaintiff did not deal fairly and openly with its “ Assureds ” — a conclusion which is sound since the early knowledgeable situation, in the exercise of reasonable diligence, permitted a definite position for disclaimer to be asserted. Equity, indeed, would be serving the unfair and neglectful insurer if it were permitted to say, as plaintiff says in its brief, that ‘ ‘ an insurer cannot under any circumstances proceed to establish its position with reference to the coverage under its policy of insurance, without first having before it a complaint served upon the insured which indicates the basis for the recovery sought.” That may be true in some circumstances, but not so in ours. Here, fraught with likelihood of many claims and lawsuits, the insurer should not have lulled the insured into a false sense of security. Initially there was no coverage and the lack thereof was discernible *969 to the investigating insurer. Yet reliance, by “ The Assureds,” may be staked on this self-created position; the ensuing sense of security is understandable, even acceptable, because the investigative prowess of an insurance company is generally known and relied upon; moreover, the insured is prone to do whatever the insurer says for fear that noncooperation or interference on its part will result in forfeiture, whatever the circumstances may be. Understandably, when requested as here, the insured leaves everything in the hands of the insurer.
Failure of the plaintiff to speak up, in any manner, until two and one-half months went by, with clear knowledge of the cause of the accident and its consequences unerringly pointing to non-coverage must, in these unusual circumstances, result in estoppel; therefore, the “reservation of rights” position, taken on April 10, 1957, will only be given anti-climactic, futile effect, without retroactive forgiveness. I have found no fitting case which is squarely apposite to the foregoing conclusions. None of the numerous cases cited by counsel pinpoint our atypical problem. Hence, it would serve no specific purpose to cite or distinguish them separately. Moreover, it is agreed that any contended equitable estoppel must be viewed in the framework of each case, and the law applicable thereto must be written in an appropriate, equity hand.
In urging its exculpatory position, the plaintiff belittles the significance of the circumstances and its conduct which preceded the position of reservation of rights, and contends that no duty was imposed upon it prior thereto; that with respect to what it did before and after such position was taken, the notice serves as a protecting measure which affords the plaintiff past absolution and future protection to proceed with investigation or defense, without prejudice to further disclaimer. This is a kind of carte blanche immunity which could cause considerable injustice, if bestowed. More so here, where there is clear evidence of substantial change of position and detriment to the defendants in consequence of the inconsistent way the plaintiff acted by taking command of the entire situation. There may well be a situation where an insurance company has done nothing to estop itself, and the reservation of rights, later made, is the only available and rightful means of fulfilling its obligation to defend, providing, at the same time, the means to protect itself in the ultimate resolution of its obligation to pay under the policy. But when an insurer acts as excessively as the plaintiff did, subsequent notice of reservation of rights becomes meaningless since no disclaimer rights remain as the subject matter for reservation.
*970 Nor was the “reservation of rights” a forthright honest statement of position such as the label connotes. It was a tongue-in-cheek, misleading device wherein the plaintiff informed '‘ The Assureds” that “we shall continue the investigation of this occurrence without the waiver or surrender on our part to disclaim liability to you and others by reason of the aforesaid policy of insurance. * * * Furthermore, the Public Service Mutual Insurance Co. reserves the right to discontinue its investigation and defense, if any, upon giving you reasonable notice thereof.” (Italics mine.) In the same breath of statement: “We are compelled to take the position that this occurrence does not come within the insurance coverage.” (Italics mine.)
Even at that stage, the plaintiff did not disclaim absolutely and compounded its previous vacillation; it did nothing to ‘ ‘ continue ’ ’ an investigation; nor was there an investigation to ‘ ‘ discontinue ’ ’, apart from the consummated G-reenfest inspection. The whole course of plaintiff’s conduct left the defendants in a confused position which permitted no certain course to be followed. Plainly, the plaintiff created this doubt, for in definable circumstances such as existed herein an express and out-set disclaimer, based on noncoverage, was an equitable duty to be timely performed. If this had been done,1 ‘ The Assureds ’ ’ would have been afforded the opportunity to act quickly as possible in protection of their interests and in a manner as made necessary by the existing circumstances. This point is to be viewed apart from the contractual obligation to defend an action (distinguished from the obligation to pay), where the complaint, despite the actualities involved, may spell out a cause of action falling within the stated coverage. The duty to defend, interposed at that juncture, is broader than the duty to pay and is thusly expressed. Apropos, such reservation of rights, when properly invoked, has a pointed and necessary purpose based on a distinct and separate obligation, differently rooted in the insurance policy.
The plaintiff confuses the pertinent positions and possibilities and feels that the .so-called reservation of rights made on April 10, 1957, was available as a means to preserve rights, as well as to excuse conduct, past, present and, to some extent, future; that since there was never any basic, valid coverage for property losses it could thereby await and vacillate until the preciseness of incoming suit papers would or would not touch upon basic insurance coverage.
The plaintiff does not realize, however, that it had already given sufficient recognition to liability where there had been none. Nor does it realize that its acceptance, with full knowl *971 edge of facts, of the claim letters and suit papers — all implying the handling and defense of prospective and existing litigation; the ‘1 continuing ’ ’ vitally essential investigation, though no such thing was happening; silence retained during the crucial preliminary .stage when duty dictated frank and alertful expressions of position, are factors all which compel estoppel against the insurer for the hurtful inconsistency practiced upon the insured.
While in most cases involving liability policies the cause for the doctrine (estoppel) usually arises after suit papers are served (which may explain the dearth of apposite cases), it does not follow that estoppel may not be invoked for cause occurring before such service or before a position of reservation is taken. Depending on the circumstances of each case, an insured may be harmed more vitally by an insurer’s conduct in a period preceding the commencement of action taken against the insured than after.
The case of Physical Culture Hotel v. Travelers Ins. Co. (270 App. Div. 1070) and the cases therein cited, urged by the plaintiff in rational support of its position, fall short of the desired purpose. Of course, “ The obligation of the insurer was determined by the allegations of Murray’s complaint” is a correct statement of the law which determines whether the defendant insurer breached its obligation to defend the action brought by a claimant against the plaintiff insured. There, the issue was simply whether the insurer should have accepted suit papers and defended the action even though there was, in fact, no basic coverage. Nothing is stated therein, however, which gives the insurer license to unduly conduct itself, inconsistently and detrimentally, before the suit papers are forthcoming. Here, the crucial problem is immersed in different factual content, and the question of equitable estoppel, which “ The Assureds ” raise, arises from the vital circumstances occurring after the casualty.
In the case at bar, the plaintiff knew at the outset what caused the accident, and that the consequences of the accident (except for personal injuries) were not covered by the policy issued to the defendant assureds; therefore, there was no necessity or reason to procrastinate to the detriment of ‘ ‘ The Assureds ’ ’ or to await receipt of suit papers before making its position of non-coverage known. The plaintiff knew, or should have known, reasonably after the accident occurred that, while it might be called upon to defend certain asserted actions (as did happen in the Physical Culture case), the casualty was such that it could never be legally called upon to pay on any claim or suit for *972 property damage precluded under exclusion clause “ L Instead, it took command of the entire state of affairs.
Silence, when there is a duty to speak, acts and conduct and prevailing circumstances determine the question of waiver and estoppel. Hence, where a party remains silent “ when he had opportunity of speaking and when he knew or ought to have known that his silence would be relied upon, and that action would be taken or omitted which his statement of truth would prevent, and that injury of some nature or in some degree would result ” will be charged with estoppel (Rothschild v. Title Guar. & Trust Co., 204 N. Y. 458, 462). Plaintiff’s silence, in addition to other conduct, was sufficiently lasting and injurious in the circumstances found to estop it from changing its position to one wherein it would now assert nonliability. And while an intentional relinquishment of a known right (waiver) may not be strenuously argued for here, estoppel conduct is well established.
I conclude, therefore, that the plaintiff was under an obligation to notify “ The Assureds ” promptly as possible, more exacting because of the enormity of the accident, that it was disclaiming liability under the policy of insurance with respect to property damage claims.
Once it is established that estoppel exists, it cannot be revoked (Kiernan v. Dutchess County Mut. Ins. Co., 150 N. Y. 190, 195 and the cases therein cited). The letter of April 10, 1957, therefore, could not extinguish the previously created right conferred upon “ The Assureds ”; nor did it foist a concomitant duty or excuse the prior estoppel of the plaintiff. Therefore, “ The Assureds ” having been placed in a prejudiced position prior to April 10, 1957, and the plaintiff having estopped itself by its conduct, there was no obligation on the part of “ The Assureds ” to reject the so-called letter of notice of 11 Reservation of Rights ”, which, anyway, was so misrepresenting and misleading that its acceptance will not be imposed upon the defendants. Lastly, the insurance company did not see fit to produce any witness who might explain its own action or, better still, its nonaction; or why it conducted no worthwhile investigation ; or why it asked for claim letters and process and retained them (and still does) until more than two months following the casualty before adopting a legally unsatisfactory, even contradictory, position of reservation of rights.
The establishment of the affirmative defense overrides plaintiff’s cause of action and is sufficient basis for a judgment declaring that the plaintiff is estopped from asserting nonliability under the instant policy with respect to all property damage *973 losses arising out of the casualty which occurred on January 20, 1957; further, that the plaintiff is required to defend all existing and future actions arising out of said accident, and shall be answerable for any final judgment or judgments which may be recovered therefrom to the extent of the policy limits.
Such conclusion renders unnecessary a construction as to whether the exclusion clause affects liability for property damage losses which occurred off the premises. The estoppel found herein affects and includes such claims and actions thereon; thus the plaintiff is legally bound therefore as if they were covered under the policy of insurance.
All motions reserved at the trial are resolved in conformity with the foregoing opinion. This constitutes the decision of the court in accordance with section 440 of the Civil Practice Act.
Settle judgment accordingly. Exhibits may be obtained from the Clerk of the Trial Term Part.