SCHOTT, Judge.
Plaintiff has appealed from a judgment dismissing its suit to collect the balance on a note made by defendant and to enforce a chattel mortgage given to secure payment of the note.
On April 3, 1972, defendant purchased a pickup truck and executed the note for the purchase price and to refinance the balance defendant owed on a stump-cutter machine purchased in 1971. The chattel mortgage covered both pieces of equipment. Regular monthly payments were made on the note through December, 1972, but thereafter the account became delinquent. Over the ensuing months plaintiff’s representatives attempted to collect the arrearages from defendant and the evidence is in conflict as to why no payments were made.
Plaintiff’s contract representative, William Sigler, testified from his notes that defendant’s only complaint was relative to excessive charges to the account for insurance on the equipment, while defendant’s president, Carmelo Graffagnini, testified that the problem arose because the stump-cutter never functioned properly. Finally, by May, 1973, Sigler became convinced that defendant was simply having financial problems and recommended to his superiors that defendant be given a release in exchange for a surrender of the two vehicles. According to Sigler, he contacted Graffag-nini and asked him to store the equipment at plaintiff’s outlet. As to why Sigler asked Graffagnini to return the equipment, he said:
“Because in our business it is normal if a customer does not pay to ask him to store the equipment to keep it from further depreciating.”
Sigler said that he was waiting for a decision from his superiors whether to take legal action or release defendant, but he denied that he ever mentioned to Graffag-nini the possibility of a complete release.
On May 21, 1973, the stump-cutter and pickup truck were delivered to plaintiff by defendant’s employee. Graffagnini’s wife testified that she received a call from Sigler in which he requested that the equipment be brought in to plaintiff’s facility and that she relayed that message to her husband.
Graffagnini testified that his surrender of the equipment came about after he had had numerous conversations with Si-gler and a Mr. Duncan, one of Sigler’s superiors. In these conversations Graffagnini had threatened plaintiff with a lawsuit because of its failure to refund allegedly excessive insurance premiums charged to defendant and had complained about the failure of the stump-cutter to perform properly. He stoutly maintained that he would not have surrendered the equipment unless the release was forthcoming because of the equity he had already built up in the equipment. An agreement was finally made between him and plaintiff’s representative that he would buy from International Harvester Company (an entity separate from but close to plaintiff in its operation), another vehicle if a release were given on the first two pieces of equipment. When he delivered the equipment he was under the impression that a settlement had been made, including a full release on the note sued on. He testified that one month following the surrender of the equipment he ordered another vehicle for $29,000, pursuant to the agreement that he had made.
Thus, it can be seen from Graffagnini’s testimony that there might have been an informal compromise of the difference between the parties aiming toward a dation en paiement, or there might have been a novation consisting of plaintiff’s agreement to release and discharge defendant of the existing obligation in exchange for defendant’s giving up of the equipment and agreeing to purchase another vehicle.
The trial judge in his reasons for judgment stated that the evidence did not sup *710 port a conclusion that there was “a definite accord and settlement between the parties.” However, the trial judge found that plaintiff was equitably estopped from collecting the balance on the account.
We agree that the evidence does not support the theory that the obligation was extinguished by any sort of release agreement, be it a dation en paiement (which was specially pleaded by defendant in its answer to plaintiff’s petition), accord and satisfaction, or a transaction or compromise, under LSA-C.C. Art. 3071, because were any of these to apply there must be a contract between the parties based upon a meeting of the minds and consent of both parties, and the compromise must be reduced to writing. There is no evidence in this record to show that plaintiff ever made such an agreement even though the evidence is persuasive that the defendant did intend such a result.
The trial judge makes no reference to Graffagnini’s testimony which tends to support a theory that the original debt was extinguished by a novation between the parties. In all probability, the trial judge was not impressed with this testimony, nor are we, because while Graffagnini testified that he ordered the new vehicle shortly after surrendering the old equipment, convincing documentary evidence shows that Graffagnini did not order the new vehicle until February of 1974, long after the suit and defendant’s answer were filed.
The crucial question is whether the law and evidence support the trial judge’s decision that plaintiff was equitably es-topped from the enforcement of the balance of its claim. The trial judge gave two reasons for this conclusion. First, plaintiff had kept the equipment while negotiating a settlement with defendant and “[A]t this late stage they now ask defendant to accept a credit for the truck which is in a highly depreciated condition;”[1] and second, the faulty performance of the equipment demonstrated that defendant was entitled to file suit for redhibition. Had defendant done so it might have prevailed, but because of plaintiff’s actions the prescriptive period ran against the filing of such a suit.
In American Bank & Trust Co. v. Trinity Universal Ins. Co., 251 La. 445, 205 So.2d 35 (1967) the Supreme Court said:
“Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded upon good faith, the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence.”
The record does not support the trial judge’s application of estoppel on the theory that defendant was deprived of an action in redhibition because it relied on plaintiff’s action. The note was given for the purchase of the truck but only to refinance the stump-cutter. The stump-cutter had been purchased sometime in 1971, perhaps as long as two years before it was surrendered to plaintiff, and the alleged defects were known to plaintiff more than a year before the surrender and more than a year since the seller’s last attempt to remedy the defects. All of the testimony regarding de *711 fects was confined to the stump-cutter but there is no such testimony with respect to the truck. The action in redhibition as to the stump-cutter had prescribed long before the surrender was made, so that plaintiff lost nothing in this regard.
However, we have concluded that the surrender of the vehicle itself, along with plaintiff’s silence thereafter, does provide a basis for the application of estoppel to defeat plaintiff’s claim.
The trial judge was apparently convinced that Graffagnini was in good faith when he surrendered the equipment on May 21, and so are we. Unless Graffagnini thought he was securing a release when he surrendered the equipment he had no incentive for doing so. He certainly had no need for plaintiff’s storage space and he was every bit as interested in protecting the equipment from depreciating as Sigler might have been. There was a suggestion by plaintiff’s representatives that the equipment was stored by plaintiff in order to assist defendant in its efforts to sell the equipment. Aside from the fact that Graffagnini denied this arrangement we are at a loss to understand how this would have helped defendant to make a sale in the first place.
Although there is some vague testimony by Sigler that he was in touch with Graf-fagnini by telephone after the surrender the record does not convincingly show that plaintiff contacted defendant from the date that the equipment was surrendered to plaintiff on May 21 until July 11, when plaintiff addressed the following letter to defendant:
“The present status of subject note is that it is very far in the arrears. The unit has been voluntarily stored at the IHC Branch in order for IHC to assist you in selling the Stump-Cutter and Pickup. To date, we have not received any indication that there is a purchaser in mind. Furthermore, our Field Representative in your area, Mr. W. E. Sigler, indicated upon his last contact your Company was not interested in trying to sell the unit. Mr. Sigler was told as far as your Company was concerned, the unit had been repossessed. As you are well aware, International Harvester Credit was not in favor of allowing you to sign a release. Therefore, you are still liable on the note.
“If all past due installments are not given to the Branch by Monday, July 16th, it is our intentions to proceed with legal action.”
Thus defendant, having relied on plaintiff’s initial request that the equipment be returned and on plaintiff’s silence while retaining the equipment for over fifty days, was for the first time told that no release had been given.
What happened thereafter was of no consequence. The trial judge was impressed that so much time had gone by when the trial was held, which has prompted plaintiff to raise the question of why didn’t defendant reclaim its property when apprised of plaintiff’s intentions. The answer is that by the time plaintiff sent its letter of July 11 it was already estopped from making its claim. Once it is established that estoppel exists, it cannot be revoked. Public Service Mut. Ins. Co. v. Hudson Properties, Inc., 15 Misc.2d 963, 182 N.Y.S.2d 710, 719 (1958).
Some authorities have indicated that the injury involved must be substantial in order to support an estoppel, 28 Am.Jur.2d 716 Estoppel § 78, and for this reason the mere surrender by defendant of the equipment might not have been sufficient to support the estoppel in this case, but when considered in the light of plaintiff’s inaction thereafter and the reasonable belief of defendant until the letter of July 11 was received that the matter was then closed and no further obligation existed there was a sufficient basis for application of the principle so as to defeat plaintiff’s claim.
*712 Our decision is consistent with Maloney Motor Car Co. v. Perrin, 155 So. 289 (La. App.Orl.1934) in which our predecessor Court held that plaintiff was estopped from collecting the balance on note secured by a chattel mortgage on an automobile where defendant voluntarily surrendered the automobile with the impression that he was being released from liability.
Pointing but that plaintiff had demanded the surrender of the vehicle when it had no legal right to do so the Court noted that the' only possible consideration defendant could have received for giving up his car voluntarily was a release or an extension of the time for payment. The Court continued:
“But the plaintiff does not claim that there was an extension of time granted, or the partial cancellation of the debt, and, therefore, the defendant, as a reasonably prudent person, might well be led to believe and understand that, by his voluntary surrender of the car at that time, without legal process, plaintiff was taking back the car as a consideration for the balance due. The plaintiff, in taking this action, which it was not entitled to under its chattel mortgage, was under the duty of making it clear to the defendant that in surrendering the automobile he was not to be granted any consideration therefor whatsoever and that execu-tory proceedings would be filed against him just the same as if he had not surrendered the car. If he had been apprised of that fact, there is no doubt in our minds that he would not have surrendered the car then. .
“It might well be that the actions of the plaintiff’s representatives, who misled the defendant, were unintentional — and there is nothing in the record to indicate the contrary — but their conduct was, nevertheless, such as to cause any reasonably prudent person to be misled as the defendant says he was. Therefore, whether or not the plaintiff’s representatives intended to cancel the balance is unimportant, since their actions were such as actually misled defendant, to his harm, and as would have misled any reasonably prudent person. It is our opinion that there was sufficient evidence to establish the plea of estoppel, and the trial court erred in overruling it.”
Plaintiff relies on Bickham Motors, Inc. v. Bickham, 104 So.2d 442 (La.App. 1st Cir. 1958) where the Court rejected the plea of estoppel under circumstances where the mortgaged automobile was voluntarily surrendered to plaintiff and stored. But in that case, the Court affirmed the trial court with the following:
“The decision in this case rests purely upon a question of fact, as to whether the surrender of the truck by the defendant to the plaintiff was voluntary and in consideration of an extension of time in which to pay the obligation due the finance company, which was in arrears, or whether the surrender was in full payment of all amounts due on the truck. The District Judge has resolved the answer in favor of the plaintiff and unless his judgment is manifestly erroneous from the record it will not be reversed.”
Thus, the case turned on factual findings favorable to plaintiff whereas in the instant case the trial judge resolved the factual dispute in favor of defendant.
However, in Bickham, the Court in no way took issue with the principle of estop-pel applied in the Maloney case but distinguished the case on its facts, noting that in Maloney the Court found no consideration whereas in Bickham there was consideration. In the instant case, as in Maloney, there was no consideration flowing to defendant for the surrender of the equipment and deprivation of use thereof.
We are cognizant of the additional distinction in Maloney that the automobile was actually sold by plaintiff under executory proceedings before any further demand was made on defendant for the balance but we do not believe that this was the deciding *713 feature in Maloney. It could hardly be said that plaintiff in Maloney or our plaintiff could hold the chattel in storage indefinitely as long as it was not sold and thereby avoid the operation of an estoppel.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.

. The original claim filed in September, 1973, was for $8045.24.
By the time of the trial held in July-, 1975, and the judgment signed on October 23, 1975, the stump-cutter had been sold pursuant to an agreement between the parties that it was sold without prejudice to either side and that the proceeds would be credited to the principal balance. While the case was pending in this Court of Appeal the pickup truck was sold with the same understanding. As a result, plaintiffs claim is for $3546.64 plus interest, attorney’s fees and costs.