LANDRY, Judge.
This is a suit on a written contract dated August 30, 1962, between plaintiff, Process Installation, Inc., and defendant, Bio Chemical Research & Development Corporation, wherein the former agreed to furnish the latter detailed engineering plans and specifications for a plant known as a fertilizer blending facility, for the stipulated fee of $15,000.00. The trial court rendered judgment in favor of plaintiff for the contract sum and defendant has prosecuted this devolutive appeal.
The chronology of events leading to this lawsuit are relatively simple and, except as hereinafter otherwise noted, virtually without dispute between the contending litigants.
*248 On the date of the aforesaid contract the affairs of defendant company, a Louisiana corporation, were conducted by a board of directors composed of its three principal shareholders, namely, John C. Porter, President; Leon H. Dyer, Secretary-Treasurer, and Paul Cook, Member. Of the total of 571,745 shares of stock issued by defendant corporation 550,000 were owned by Porter, 10,000 belonged to Dyer, 10,000 were the property of Cook and the remaining 1,745 shares were held by eight other individuals whose names do not appear of record.
It appears that defendant desired to secure a Master Plan for a fertilizer blending facility adaptable to franchise area plants it proposed to build in establishing a chain of such installations. Although the record is not entirely clear on this point, we gather it was appellant’s intention to obtain a master plant plan showing construction details and estimated building costs of such a facility for the enlightenment, information and guidance of banks and other financial institutions defendant hoped to interest in making loans to erect such installations for persons and firms to whom defendant proposed to grant franchises.
In any event the record discloses an undated letter of intent issued in the name of defendant corporation by Dyer in his capacity as secretary-treasurer. Dyer concedes the letter preceded the signing of the contract executed August 30, 1962. The aforesaid letter (which followed conferences and negotiations between Porter, Dyer and defendant’s representatives) instructs and authorizes appellee to proceed with preparation of plans for the desired facility and bound defendant to pay the sum of $15,000.-00 therefor. The concluding paragraph of the letter expressly states its terms are binding upon defendant corporation.
The contract, executed on behalf of defendant corporation by its President, Porter, was duly witnessed by appellant’s Secretary-Treasurer, Dyer, and recites defendant’s agreement to pay the sum of $15,000.00 for complete plans and specifications for a facility of the character previously noted. More precisely, the contract states the agreed fee was payable in two installments, namely, the sum of $7,500.00 being due September 10, 1962, and the remaining $7,500.-00 upon completion of the plans.
Following consummation of the contract of August 30, 1962, appellee immediately commenced preparation of the necessary plans, drawing and specifications. During the course thereof Porter and Dyer made several trips to Houston, Texas, to discuss progress of the plans with appellee’s representatives, particularly Edmund W. Bow-_ den, President of plaintiff corporation.
On September 17, 1962, Bowden addressed a letter to defendant corporation directed to the attention of Dyer and indicating transmittal of a copy thereof to Porter. In substance the letter informs defendant that the plans have progressed to the point where a start could be made on financing, advises of Bowden’s willingness to participate in any discussion with bankers and calls attention to the fact the installment of $7,500.-00 due September 10, 1962, has not been paid and is in arrears.
Subsequently, by letter dated November o, 1962, Bowden advised Dyer the plans were completed in accordance with contract specifications and expressed his availability for a meeting with bankers which defendant was to have arranged but had not done so. In addition, Bowden enclosed a statement for the full engineering fee of $15,000.00, reminding defendant that the installment due September 10, 1962, had not been paid and that the total fee was due. No further communication was had between plaintiff and defendant until institution of suit by plaintiff on July 17,1963.
Simply stated, appellee maintains it fulfilled its agreement to prepare detailed engineering plans and specifications for the master plan desired by defendant and that by the terms of the contract the full fee was due upon completion of said plans.
*249 Appellant’s defense is twofold. First, it is contended defendant corporation is not liable under the contract inasmuch as its said representatives were without authority to execute the agreement. In this connection it is pointed out that no resolution was ever adopted by defendant corporation authorizing Porter and Dyer to sign the contract on defendant’s behalf. Secondly, and alternatively, appellant maintains appellee never completed the plans as required by the contract.
We shall consider first the alternative defense that appellee did not complete the plans and specifications which it undertook to prepare.
The evidence reveals that the plans and specifications were in fact prepared and made ready by November 6, 1962, on which date Bowden advised Dyer the plans were complete and plaintiff stood ready to assist defendant in any way possible to attempt to obtain finances to construct a plant. The record is barren of any contradictory evidence. In fact, the fair inference to be drawn from the record is that defendant ignored plaintiff’s communications and for reasons best known to itself either could not or did not interest any financial institution to the point that a meeting could b< arranged which warranted plaintiff’s presence in an advisory or consultative capacity. We have no hesitancy in concluding plaintiff has established its completion of the plans by a fair preponderance of evidence.
Assuming, arguendo, defendant’s officers, Porter and Dyer, were unauthorized to execute the agreement on defendant’s behalf, appellant is nevertheless bound thereby upon the well established principle of ratification.
It is settled law that unauthorized acts of corporate officers or agents may become binding upon the corporation by ratification express or implied.
We can find no better way to express the rule applicable to the issue before us than is contained in the pronouncement of our own Supreme Court in Dunham-Pugh Company v. Stephens, 234 La. 218, 99 So.2d 88, wherein we find the following which we quote with approbation:
“A general statement of the law with which we are concerned in this case may be found in 19 C.J.S. [Corporations § 1018] at page 49S where we find the following:
“ ‘Except where the ratification is required, under the rules stated in § 1017 supra, to be made in a particular manner, an implied ratification of the unauthorized acts of an officer or agent binds the corporation under the same conditions as would an express ratification. Generally, ratification may be implied from the acquiescence in, or recognition of, the act by the corporation, through its proper officer or agent, see infra § 1019, or from its accepting and retaining the benefits of the act, see infra § 1020, or from any other acts or conduct which reasonably tend to show an intention to adopt or affirm the act or contract, particularly where it appears that the corporation has repeatedly recognized and approved similar acts done by the officer or agent, provided at the time of such acts or conduct it has full knowledge of the material facts, in accordance with the requirements indicated in § 1015 supra; and where the unauthorized act or contract is clearly beneficial to the corporation, a ratification may be implied from slight circumstances.’
“Also see 19 C.J.S. [Corporations § 1019] page 497 which reads as follows :
“ ‘In accordance with the rules which govern ratification by acquiescence in other cases of agency, mere silence or delay on the part of the corporation in repudiating an unauthorized act of its officer or agent does not necessarily amount to a ratification of such act, although it is always an element to be considered in connection with other evidence tending to show a *250 ratification; and, unless the doctrine of ultra vires applies, as a general rule, if the Corporation, through the officer or body having authority to act acquires or is charged with knowledge of the unauthorized act and does not repudiate it within a reasonable time, but without objection acquiesces therein, it will be held to have ratified the act, unless there is a sufficient excuse for the delay or failure to repudiate.
“ ‘This general rule particularly applies where the delay has been for a long period of time, or where the silence or acquiescence is accompanied by acts indicating an approval or recognition of the unauthorized act, or where the corporation receives and retains the benefits of, or exercises acts of dominion over the subject matter of, the unauthorized act, where the circumstances are such as to impose upon the corporation a duty to act promptly, as where loss or injury to the other party is likely to result on its failure to do so. Thus, where the president executes a contract which requires the concurrence of the board of directors, and the board, knowing that he has done so, does not dissent within a reasonable time, it will be presumed to have ratified the act. Where, however, the corporation promptly expresses its disapproval of the unauthorized act, any delay in asserting its rights will not be deemed as a ratification.’
“A recent Louisiana case which states the jurisprudence of this State on the subject is that of Acadian Production Corporation (of Louisiana) v. Savananna (sic) Corporation, 222 La. 617, 63 So.2d 141:
“ ‘It is the universally accepted and recognized rule that contracts entered into or other transactions engaged in without authorization from the governing authorities of a corporation may be ratified either expressly or by implication by those having the authority, provided the action was not prohibited by the corporation’s charter, by statute, or is not contrary to public policy. Vol. 2 Fletcher’s Cyclopedia of Corporations 765, Sections 750-785 ; 3 Thompson on Corporations (3rd ed.) 738, Sections 2105-2170; 7 R.C.L. 662, Sections 663-668; 14A C.J. 373 Section 2232, etc.; 19 C.J.S. Corporations § 1014; 13 Am. Jur. 927, Section 972; 7 A.L.R. 1446. The law and jurisprudence of this state are to the same effect. (Cases cited.)”
In the case at bar it appears that at least a majority (two of three) of the members of defendant’s board of directors were fully aware and cognizant of the agreement from its inception, including the negotiations which preceded execution of the undated letter of intent executed by Dyer prior to signing of the formal contract. The contract itself was executed by Porter, President of defendant corporation, for, in the name and on behalf of appellant company. Bowden testified all negotiations were conducted with defendant’s officers pursuant to their express representation they were acting on behalf of the corporation and not individually. In this respect he is corroborated by both Porter and Dyer who conceded they intended to act on behalf of the corporation and were unaware of their lack of authority until after the contract was signed August 30, 1962.
On this latter issue the testimony of Porter and Dyer is most interesting. Porter stated that although he intended to act on behalf of the company he did not know of his lack of authority until sometime after the contract was signed August 30, 1962. When pressed for a precise date on which he became aware of his lack of authority to act for the company, he was most evasive and could not in fact fix an exact time except to say that subsequently he was informed by defendant’s attorney he did not possess such authority as the board of directors had never adopted a resolution authorizing execution of the contract on defendant’s behalf.
*251 Dyer, however, was more explicit. He frankly conceded that within a “few days” of his return from Houston after signing the agreement of August 30, 1962, he was informed by defendant’s attorney that he and Porter lacked authority to bind defendant.
It is of the utmost significance, however, that both Porter and Dyer concede they never advised plaintiff of their alleged lack of authority to bind defendant company prior to institution of suit by ap-pellee.
We are herein confronted with a situation in which a majority of the board of directors of a corporation owning 560,000 of a total of 571,745 outstanding corporate shares, entered into a contract for, in behalf of and in the name of the corporation with the full, express, clear and admitted intent to thereby bind the corporate entity they represent. Thereafter, for a period in excess of ten months (August 30, 1962-July 17, 1963), neither advised plaintiff of their alleged lack of authority nor attempted to repudiate the contract notwithstanding both had been advised by legal counsel of their inability to act on defendant’s behalf. Even after plaintiff’s completion of its obligation under the contract and submission of a statement for the contract price (approximately eight months before institution of suit) neither of defendant’s officers repudiated or denied their authority to represent defendant. On the contrary, the record discloses that during the entire time Porter and Dyer led plaintiff to be lieve they were duly authorized to represent defendant company. Through its aforesaid officers, defendant continued its acquiescence and approval of their actions, received the benefits thereof and not only failed to repudiate such actions within a reasonable time but neglected to object at all until demand was instituted on the agreement by plaintiff filing suit.
Nor do we find any merit in the contention that Cook, the third member of defendant’s board of directors, allegedly had no knowledge of the transaction in question. The record contains a purported valid resolution of the board, (relating to other matters) which shows on its face its adoption at a special meeting held August 31, 1962, attended only by Porter and Dyer. Waivers of notice of the called meeting attached to the minutes indicate they were signed only by Porter and Dyer. No waiver of notice by Cook appears in the record. We believe this circumstance justifies the conclusion the corporation’s affairs were customarily administered by the board majority consisting of Porter and Dyer, who, in view of the events shown, for all practical purposes constituted defendant’s entire board of directors.
Having ratified its officers’ actions by its continued prolonged silence and having accepted the benefits of the contract insofar as it was able, defendant corporation may not now be heard to repudiate their authority.
Accordingly, the judgment of the trial court is affirmed at appellant’s cost.
Affirmed.