BOLIN, Judge.
Plaintiffs sued for specific performance of a sublease agreement which was signed by an employee of defendant corporation. Defendant denied the validity of the agreement, claiming its employee had no authority to sign the instrument. To this answer plaintiffs filed a plea of estoppel. The trial court rejected plaintiffs’ demand and they appeal. We affirm.
The issue on appeal is the validity of the sublease agreement which requires resolution of two questions: Did the employee have actual authority to sign? If not, is defendant corporation estopped from denying the validity of the agreement because of the actions of its president in dealing with plaintiffs?
Plaintiffs’ assertion that the employee had actual authority is predicated on the testimony of the employee who stated that Harry Fair, president of the corporation, called him from Chicago and told him to “go ahead and sign” the agreement. Fair categorically denied this testimony and testified he had told the employee not to sign the agreement. The trial judge resolved this irreconcilable conflict in testimony adversely to plaintiffs and we find no error in this conclusion.
*942 The difficult question is that raised by the plea of estoppel.
Plaintiffs are partners engaged in the secondary recovery of oil on their leases, and defendant owns and operates leases on adjoining land. Plaintiffs contend that, in order to make their operation economically feasible, they commenced negotiations with defendant’s Louisiana representative in an effort to acquire subleases on the adjoining property. These negotiations were continued with John Schulze, who succeeded the previous representative and who had a business card indicating he was vice-president of Calumet Refining Company, a Louisiana division of defendant corporation.
On March 14, 1974, Pair, president and chief executive officer of the parent company, came to Shreveport and met with Schulze and two of the plaintiffs to review a draft of the proposed sublease agreement. Pair rejected the proposal because it failed to meet defendant’s requirements. However, according to plaintiffs, Fair led them to believe that if plaintiffs and Schulze could work out the details, they “had a deal.” Pair denied such a deal. Prior to this meeting it was understood by plaintiffs and by Schulze that no agreement would be valid without Pair’s approval.
Plaintiffs drew up a new agreement, omitting any reference to a resolution of the board of directors granting authority to a person designated to sign the agreement, leaving blank the space for the name of the person who was to sign, and incorporating a provision for the increased demands of defendant. This agreement was delivered to Schulze, who testified he mailed a copy of the new proposal to Pair in Chicago; that Fair advised him by telephone to go ahead and sign.
On March 22, 1974, Schulze signed the agreement purportedly as vice-president of Calumet Refining Company, and mailed a $5,000 check, bearing the inscription “as per agreement dated this date”, to the secretary-treasurer of Calumet Industries, Inc. This check was deposited in the corporation’s regular account. The evidence establishes that Schulze was not in fact vice-president of defendant corporation.
Pair admitted the treasurer told him about the check but that he was not certain he “followed through with it.” Pair denied he had received a copy of the new proposal or that he had advised Schulze to sign it. Further, he stated he had never seen the signed agreement until the present litigation; that he had specifically advised Schulze not to sign the earlier proposal. There is no evidence of any subsequent communication between Pair and plaintiffs until some sixteen months later.
On August 4, 1975, plaintiffs notified defendant they were exercising their option and were ready to take over operation of the leases as per the agreement. This notice and two follow-up notices were not answered by defendant corporation, but on September 25, 1975, Pair met with plaintiffs and their attorney and disavowed the agreement. Suit was filed November 17, 1975, and six months later defendant’s attorney attempted to return to plaintiffs the $5,000 mentioned previously, claiming it had been received in error. This attempted return was refused.
Plaintiffs claim the actions of the corporation and its president, as disclosed in the above recitation of facts, estopped defendant from denying the validity of the agreement; that these actions justified plaintiffs in believing Schulze was authorized to bind the corporation by signing the agreement; and that in reliance on the validity of the agreement they had proceeded to expend large sums of money in preparation for their secondary recovery efforts on defendant’s leases.
Three elements are necessary to maintain a plea of estoppel, namely: (1) representation, (2) reliance, and (3) change of position to one’s detriment. The burden of establishing the facts upon which the plea is predicated, as well as affirmatively showing that the pleader was misled and forced to act to his prejudice, rests upon the party invoking the estoppel. American Bank and Trust Co. v. Trinity Universal Insurance Co., 194 So.2d 164 (La.App. 1st *943 Cir., 1966), aff’d 251 La. 445, 205 So.2d 35, and cases cited.
Although plaintiffs have alleged and offered evidence that they were misled by Schulze’s ostensible authority, they have failed to prove they have suffered any actual damages. The $5,000 has been tendered back to them and, although they claim they have made large expenditures preparing for the secondary recovery operation, they have introduced no proof that these expenditures have been made; nor have they proved these expenditures, if made, would not have been made without the agreement. Assuming for the sake of argument that plaintiffs have proved the first two elements, we find they have failed to prove that plaintiffs changed their position to their detriment. American Bank & Trust Co., supra; also Shirey v. Campbell, 151 So.2d 557 (La.App. 2d Cir., 1963).
Plaintiffs have not specifically urged that defendant ratified the agreement; nevertheless the issue of ratification has been raised by their citation of Process Installation, Inc. v. Bio Chemical R & D Corp., 173 So.2d 247 (La.App. 1st Cir., 1965).
In Process the court quoted with approval the general rules pertaining to ratification found in 19 C.J.S. Corporations § 1018 et seq., and adopted in Dunham-Pugh Company v. Stephens, 234 La. 218, 99 So.2d 88 (1958). Pertinent here is the portion of the rule that, “if the corporation, through the officer or body having authority to act, acquires or is charged with knowledge of the unauthorized act and does not repudiate it within a reasonable time, but without objection acquiesces therein, it will be held to have ratified the act, unless there is sufficient excuse for the delay or failure to repudiate.”
We accept Fair’s testimony where it is in conflict with that offered by plaintiffs. Fair testified he left the 1974 Shreveport meeting with a firm understanding that no sublease agreement would be entered into with plaintiffs except over his signature. All transactions thereafter were with Schulze, who was acting without authority.
The most damaging evidence agamst Fair was his admission that the corporate treasurer told him about receiving a $5,000 check from plaintiffs. We do not find this sufficient to prove ratification. While there were other figures used in the negotiation, $5,000 was never mentioned. We find it reasonable that Fair did not connect this check to the sublease discussions with plaintiffs. We also find that Calumet’s disregard of plaintiffs’ three letters advising of their intention to take possession of the lease was reasonable. As far as Fair was concerned, no agreement had been signed and these letters deserved no immediate answer, especially when one considers that in less than two months thereafter he consulted his attorney and repudiated the agreement.
Considering the totality of the evidence, we find plaintiffs have failed to prove es-toppel or ratification.
The record is not clear whether the $5,000 is in the registry of the court or is being held by defendant. Accordingly, the judgment is amended to order this money returned to plaintiffs, and as amended the judgment is affirmed at appellants’ costs.