SANDERS, Justice.
 

 American Bank and Trust Company .brought suit against Trinity
 
 [1]
 
 Universal
 
 *450
 
 Insurance Company, surety on the bond of Cortez Construction Company, Inc., and its agents, Meyers, Whitty and Hodge, Inc., and John W. Whitty, Jr., to recover $13,-000.00, the balance due on three promissory notes of Cortez Construction Company, with interest, attorney fees, and penalties.
 

 The petition alleged that Trinity through its agent, John W. Whitty, Jr., of Meyers, Whitty and Hodge, executed payment and performance bonds for Cortez Construction Company under a U. S. Army Corps of Engineers levee construction contract in Louisiana. The plaintiff Bank advanced the company $13,000.00 for interim financing represented by demand notes of Cortez Construction Company which remained unpaid.
 

 As a basis for recovery against defendants, the petition alleged in substance:
 

 (1) The Bank was induced to make the loan by a letter dated August 21, 1961, signed by John W. Whitty, Jr., on behalf of Trinity naming the Bank as a co-obligee under the construction bonds and by the verbal representations of Whitty conveyed by Cortez with the letter that the letter amendment would fully secure the loan and make the Bank a prime claimant under the bonds.
 

 (2) After Cortez Construction Company defaulted on the construction contract, Trinity undertook to complete the work and entered into a supplemental contract with the United States government assuming Cortez’s obligations with respect to the contract.
 

 (3)That Trinity wrongfully withheld from the Bank the retainage funds under the contract.
 

 The defendants excepted to the jurisdiction of the state court, asserting that the federal courts have exclusive jurisdiction of suits on bonds furnished under the “Miller Act”, 40 U.S.C.A. 270a, 270b. They also filed exceptions of no right and no cause of action.
 

 The trial court overruled the exceptions. It then rendered judgment in favor of plaintiff against Trinity in the amount prayed for, but dismissed the suit against the other defendants. Trinity appealed the judgment against it to the Court of Appeal. In that court, Trinity filed a plea of one-year prescription under 40 U.S.C.A. 270b. As to jurisdiction, the Court of Appeal affirmed the trial court. But on the merits, the Court of Appeal reversed the trial court and dismissed the suit. 194 So.2d 164. On application of plaintiff, we granted certiorari to review the judgment of the Court of Appeal. 250 La. 544, 197 So.2d 82.
 

 The record reflects that on May 8, 1961, the United States Corps of Engineers contracted with Cortez Construction Company of which Gilford Cortez was president,
 
 *452
 
 for a levee enlargement near Bayou Sorrel for a total price of $88,629.00. As surety for the construction company, Trinity executed the required payment and performance bonds with the United States of America as obligee. John W. Whitty, Jr., of Meyers, Whitty, and Hodge, signed the bonds as agent for Trinity.
 

 In August, 1961, Gilford Cortez applied to the American Bank and Trust Company of Opelousas for an “interim financing” loan, as he had done previously for other company construction. Patterson Willis, vice-president of the Bank, advised him that the Bank required an assignment of the contract proceeds as security for the loan. To secure the assignment, Cortez called on Whitty, the bond agent, in New Orleans.
 

 The conversation between Cortez and Whitty is in dispute. Cortez testified he asked Whitty for the assignment. Whitty told him that an assignment would involve a “lot of red tape” and that a letter making the Bank a co-obligee under the bonds was “as good if not better than the assignment.” He stated to Cortez that the letter would make the Bank a prime claimant under the bonds for repayment of the loan.
 

 Whitty gave Cortez the following letter:
 

 “August 21, 1961
 

 “American Bank & Trust Company ■ Opelousas, Louisiana
 

 Gentlemen:
 

 RE: BOND NO. 320640 — TRINITY UNIVERSAL INS. CO. CORTEZ CONSTRUCTION COMPANY, INC.
 

 IN FAVOR OF UNITED STATES OF AMERICA COVERING CONTRACT NO. DA-16-047-CIVENG-61-261, ITEM E-S8.9, LEVEE ENLARGEMENT BELOW BAYOU SORREL LOCK, EAST ATCHAFALAYA BASIN PROTECTION LEVEE, IBERVILLE PARISH, LA.
 

 AMOUNT OF CONTRACT $88,629.00 — DATED 5/8/61
 

 This will inform you that we are naming your Bank as an additional obligee under the above captioned bond.
 

 Yours very truly,
 

 TRINITY UNIVERSAL INSURANCE COMPANY By /S/ John W. Whitty, Jr.
 

 Attorney-in-fact”
 

 
 *454
 
 Whitty denied giving any assurance that the letter would make the Bank a prime claimant under the bonds for repayment of the loan. He wrote the letter, he testified, “in compliance with the request of a friend and customer.” He informed Cortez the letter would not in his opinion benefit the Bank. He testified that naming the Bank a co-obligee simply meant it would be notified of any change in the contract, such as extension of time, default, or delay damages.
 

 Several days after receiving the letter, Cortez took it to vice-president Willis at the Bank. He informed Willis that Whitty had said the letter would protect the Bank for repayment of the loan and suggested that Willis call Whitty to verify this. Willis informed Cortez he would present the loan request to the Bank discount committee the following morning.
 

 While considering the loan, Willis examined a photostatic copy of the Cortez-Trinity bonds in the Bank files, but did not consult the Bank’s attorneys concerning the legal aspects of the loan.
 

 As vice-president, Willis presented the loan request to the discount committee composed of seven businessmen. He advised them of the letter and of the reported assurances of Whitty concerning its effect. He suggested, however, that the committee consult Clarence Hogan, the Bank’s New Orleans bondsman, concerning the matter. In the presence of the committee, Willis telephoned Hogan. According to the testimony of Willis and Howard LaFleur, a member of the committee, Hogan advised that the letter would amply secure the Bank and make it a claimant under the bonds, priming the claims of laborers and materialmen.
 
 [1]
 

 Willis testified that, though he sought the opinion of Hogan, he relied on the Whitty letter as security for the loan. LaFleur stated, in approving the loan, the committee relied upon the opinion of Hogan as to the legal effect of the letter. No committee member suggested calling Whitty or securing legal advice from the Bank’s attorneys.
 

 . On September 5, 1961, the Bank made the first loan to Cortez Construction Company. On the Back of of this note, as well as later notes, was the notation “Bond assgn. American Bank & Trust Co. as coobligee,” followed by the signature of Gilford Cortez, as company president and as an individual.
 

 Shortly thereafter, at the request’ of Willis, Cortez wrote the U. S. Army Engineers to make future progress payments to the Bank. In reply, the Army Engineers advised Cortez that he could.
 
 *456
 
 execute a formal assignment making the Bank payee of the checks or he could authorize the checks payable to Cortez Construction Company to be mailed to the Bank. On October 12, 1961, at the direction of Willis, Cortez elected to have the checks mailed to the Bank with no change in the payee.
 

 During the course of the contract, government checks exceeding $47,000.00 were deposited in the Cortez Construction Company account at the Bank. Although the demand notes authorized the Bank to debit the account at any time to satisfy the notes, the Bank made no debit, preferring to wait until the completion of the job to balance accounts.
 

 The Cortez Construction Company retained the funds from all of its construction projects in the same bank account. Cortez testified, however, that about 95% of the checks drawn during this period “went toward the Bayou Sorrel job.” The tableau of checks discloses that Cortez made-payments to creditors who had no secured status under the construction bond as laborers or materialmen.
 

 Cortez Construction Company defaulted on the contract in August, 1962, when only about 5% of the work remained to be done. As surety on the bond, Trinity undertook to complete the contract. On August 22, 1962, Cortez executed a formal assignment of all future progress payments and retainages to Trinity. On November 23, 1962, as transferee of the contract, Trinity entered into a supplemental agreement with Cortez Construction Company and the United States Army Corps of Engineers, providing in part:
 

 “2. The Transferee hereby assumes, agrees to be bound by, and undertakes to perform each and every one of the terms, covenants, and conditions contained in the contract. The Transferee further assumes all obligations and liabilities of, and all claims and demands against the Transferor under the contract, in all respects as if the Transferee were the original party to the contract.
 

 “3. The Transferee hereby ratifies and confirms all actions heretofore taken by the Transferor with respect to the contract with the same force and effect as if the action had been taken by the Transferee.”
 

 Trinity paid all claims for labor and material and completed the contract on December 20, 1962. Trinity declined to pay the Bank notes. The Bank filed this suit on February 14, 1964.
 

 The exception to the jurisdiction lies at the threshold of the case. In a well-reasoned opinion, the Court of Appeal overruled the exception. We affirm the ruling.
 

 On the merits, the trial court found that Whitty had represented that the bond amendment letter would give the Bank the
 
 *458
 
 right to recover on the bonds, and because of the representation, the Bank was induced to make the loans. The borrowed money, it found, had been used to pay for labor and materials on the job. The court rested its judgment in favor of the Bank on “equitable subrogation” and estoppel. The Court of Appeal rejected both subrogation and estoppel and denied recovery.
 

 In this Court, the plaintiff Bank concedes, as it must, that it has no action directly on the statutory bonds. It advances several theories of liability based upon the bond amendment letter, the bond agent’s representations as to the effect of that letter, the surety’s supplemental agreement assuming all obligations with respect to the contract, and the use of the loan to finance work under the contract. We deal specifically with the main theories advanced.
 

 The Bank asserts that, if properly construed according to the intention of the parties, the bond amendment letter created an
 
 independent
 
 contract, obligating the bonding company to satisfy the notes if the maker failed to do so.
 

 We are unable to place such a construction on the letter. Its language is clear. The letter named the Bank as an “additional obligee under the * * * bond.” Like the United States, the original obligee, the Bank became a party in whose favor the bond ran. The letter identified the bond, but contained no recital of the conditions of the bond. Nor did it purport to modify these conditions. It bound no one to repay the Bank loan.
 

 Actually there were two bonds. They speak for themselves. The payment bond guaranteed the laborers and materialmen would be paid. The performance bond guaranteed the construction would be completed. The Bank held a copy of each of them in its files.
 

 The Bank submits that the best evidence of the intention of the surety to be bound for the repayment of the loan is a letter from Trinity’s claim supervisor to its New Orleans attorney and agent authorizing the payment of two drafts in favor of the Bank during the early stages of the dispute. Trinity objected to the introduction of the letter on the ground it was a privileged communication. Assuming the communication admissible, we find nothing in it which militates against our analysis of the obligee letter. The Bank’s contention that the obligee letter created an independent contract to pay the Bank notes must fail.
 

 Alternatively, the Bank invokes the doctrine of equitable estoppel. It asserts the surety is barred from denying its obligation to satisfy the notes by the agent’s representations, on which the Bank relied in making the loan.
 

 For a consideration of this doctrine, we accept the factual findings of the trial court, that when Whitty delivered the obligee let
 
 *460
 
 ter to Cortez, he represented to him the letter was as .good or better than a contract assignment and made the Bank a prime claimant under the bonds for repayment of the loan.
 

 Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded upon good faith, the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence. Montague v. Weil & Bro., 30 La. Ann. 50; Shirey v. Campbell, La.App., 151 So.2d 557; 3 Pomeroy’s- Equity Jurisprudence (5th ed. 1941), § 804, pp. 188-190; 31 C.J.S. Estoppel § 59, pp. 367-377; 28 Am.Jur.2d, Estoppel and Waiver, § 27, pp. 627-629.
 

 Since estoppel bars the normal assertion of rights, courts apply the doctrine cautiously. Selber Bros. v. Newstadt’s Shoe Stores, 203 La. 316, 14 So.2d 10; Succession of Butterworth, 195 La. 115, 196 So. 39; Louisiana Oil Refining Corporation v. Williams, 170 La. 218, 127 So. 606.
 

 To raise an equitable estoppel, the r.ecord ' must establish not only that the. pleader relied upon a representation or other conduct, hut also that he was justified in so doing. Justifiable reliance is fundamental.
 

 The representation chárged to the defendant in the present case relates to the legal effect of the bond amendment letter. Both parties knew all the facts. Hence, the representation is one of law.
 

 Generally, a misrepresentation of law raises no equitable estoppel. Only under exceptional circumstances is a party justified in relying upon a representation of law. Such exceptional circumstances include the existence of a confidential relationship between the parties or greatly superior knowledge of the subject on the part of the representor. See Wadley v. Gleason, 192 La. 1052, 190 So. 127; Straus v. City of New Orleans, 166 La. 1035, 118 So. 125; Brian v. Bonvillain, 111 La. 441, 35 So. 632; Gales v. Christy, 4 La.Ann. 293; 31 C.J.S. Estoppel § 79, pp. 464-466; and 28 Am.Jur. 2d, Estoppel and Waiver, § 47, pp. 655-656.
 

 Under the facts of this case the bond agent stood in no relation of trust or confidence to the Bank. He was a stranger to the Bank officials. He had no reason to believe the Bank would rely upon his legal opinion.
 

 No substantial disparity in competence to' form a reliable opinion as to the effect of the bond letter existed as between the bond agent and Bank officials. The bond agent was not an attorney. In addition, the-rec
 
 *462
 
 ord reflects the Bank officials were quite experienced in loan transactions.
 

 Under the circumstances, we conclude the Bank was unjustified in relying upon the bond agent’s representations of law.
 

 Moreover, as found by the Court of Appeal, the Bank officials did not in fact rely upon the agent’s representations as to the legal effect of the letter. Instead, they relied upon the opinion of the bondsman with whom the Bank transacted business.
 

 Moving past the agent’s representations as to the
 
 legal effect
 
 of the letter, the Bank asserts it relied upon the letter itself. This argument lacks substance. The letter contained no misrepresentations, and as we have noted, it was clearly phrased.
 

 On the facts of this case, we reject the doctrine of equitable estoppel.
 

 The Bank also relies upon the supplemental agreement whereby Trinity assumed the contractor’s obligations “under the contract” and ratified the contractor’s actions “with respect to the contract.” The Bank argues that the loan was at least an action with respect to the contract, since the contractor used all or a substantial portion of the funds for the expenses of construction under the contract.
 

 We find the evidence insufficient to establish the exact amount of the loan funds used to pay for labor and material in the levee construction. However, the evidence does show that a substantial portion of the loan was used by the contractor to pay costs related to the construction.
 

 Our appreciation of the agreement is that it contemplates only actions affecting the obligations of the construction contract. A loan made to the contractor is not such an action, though the funds may be ultimately used to pay construction costs. Hence, the Bank has no right to recover the loan from the surety under'the agreement.
 

 Relying upon the same agreement, the Bank maintains that the surety ratified the contractor’s action in “assigning” the contract checks to the 'Bank. Hence, the surety and contractor had no' right to change the mode of payment. The Bank seeks all payments and retainage transmitted after the change.
 

 We find no merit in this .argument. The contractor executed no assignment of .the contract proceeds to the Bank. Rather, it merely requested that the checks be mailed to it in care of the Bank. The request , entailed no change of payee but respresented a designation of mailing address only. Such a request may be countermanded at any time.
 

 Finally, the Bank maintains it is entitled to recover under Article 2134 of the Louisiana Civil Code. That Article provides :
 

 
 *464
 
 “An obligation may be discharged by any person concerned in it, such as a coobligor or a surety.
 

 “The obligation may even be discharged by a third person no way concerned in it, provided that person act in the name and for the discharge of the debtor, or that, if he act in his own name, he be not subrogated to the rights of the creditor.”
 

 In this Court, the Bank asserts no right of subrogation under the Article. Instead, it asserts that it occupies the position of a third person who pays the debt of another in his own name. Hence, the Bank contends it is entitled to reimbursement from the debtor, whom it benefited. It relies upon Standard Motor Car Co. v. State Farm Mut. A. Ins. Co., La.App., 97 So.2d 435.
 

 The Bank needs no support from this Code Article for a cause of action against Cortez Construction Company, the contractor. That cause of action arose from the loan itself.
 

 The Code Article, however, confers no rights on the Bank as against Trinity. The Bank paid the debt of no one. Rather, it loaned money to the contractor and credited the loan proceeds to the contractor’s account. The circumstance that the contractor later paid its debts with the funds from the loan fails to satisfy the requirements for recovery from Trinity. The Code Article clearly requires that a third person in his own name discharge the obligation of the debtor.
 

 We find the case of Standard Motor Car Co., v. State Farm Mut. A. Ins. Co., supra, inapposite from a factual standpoint.
 

 For the reasons assigned, the judgment of the Court of Appeal is affirmed at plain- ' tiff’s costs.
 

 [1]
 

 . Although Hogan was present at the trial under defendants’ summons, neither party called him as a witness.