284 So.2d 545 (1973)
Roberta KISTNER, widow of Samuel J. CRABTREE
v.
BETHLEHEM STEEL CORPORATION.
No. 52350.
Supreme Court of Louisiana.
March 8, 1973.
On Rehearing September 24, 1973.
Rehearing Denied October 26, 1973.
Frank S. Bruno, New Orleans, for plaintiff-applicant.
*546 Sessions, Fishman, Rosenson, Snellings & Boisfontaine, Cicero C. Sessions, Robert E. Winn, Suzanne Antippas, New Orleans, for defendant-respondent.
HAMLIN, Chief Justice:
Certiorari was directed to the Court of Appeal, Fourth Circuit, for review of its judgment which dismissed plaintiff's suit and reversed the judgment of the trial court. Art. VII, Sec. 11, La.Const. of 1921; 258 So.2d 199; 261 La. 771, 260 So. 2d 700.
The facts of record disclose that plaintiff's husband, Samuel J. Crabtree, a former employee of Bethlehem Steel Corporation, died from injuries suffered during the scope and course of his employment on May 13, 1963. Subsequent to Crabtree's death, the employer paid Workmen's Compensation benefits to the plaintiff at the rate of $35.00 per week until January 10, 1969, at which time it discontinued payment. Total payments of $10,045.00 were made; the maximum which could have been paid was approximately $14,600.00. See LSA-R.S. 23:1202; LSA-R.S. 23:1231.
On January 7, 1969, Mrs. Crabtree and the American Insurance Company executed the following agreement, which was the reason for defendant's cessation of paying Workmen's Compensation:
"BE IT KNOWN BY THESE PRESENTS that Mrs. Roberta Kistner Crabtree, a person of the full age of majority and a resident of New Orleans, Louisiana, for and in consideration of the sum of $15,000.00 cash, to her in hand paid by The American Insurance Company, insurer of Mason-Rust, a Joint Venture comprised of Mason & Hanger-Silas Mason Co., Inc. and The Rust Engineering Company, and of The Ross Corporation, has released, acquitted and discharged and does by these presents forever release, acquit and discharge The American Insurance Company, Mason-Rust, a Joint Venture comprised of Mason & Hanger-Silas Mason Co., Inc. and The Rust Engineering Company, Mason & Hanger-Silas Mason Co., Inc., The Rust Engineering Company, The Ross Corporation, and all of their respective executive officers, directors, stockholders, agents and employees, including, but not limited to, R. B. Jewell, Tom Cobb and Tom Ward, of and from any and all claims, demands, suits, actions and causes of action whatsoever, arising or in any manner growing out of the accident which occurred on or about May 13, 1963 at the Michoud Facility of the National Aeronautics and Space Administration in New Orleans, Louisiana, wherein her late husband, Samuel J. Crabtree, was killed, being the accident referred to and described in the suit entitled `Mrs. Roberta Kistner, Widow of Samuel J. Crabtree vs. Insurance Company of North America et al', bearing No. 14545 on the Docket of Civil Actions of the United States District Court for the Eastern District of Louisiana, New Orleans Division; the said Mrs. Roberta Kistner Crabtree hereby specifically reserving unto herself all of her rights to assert and/or prosecute all claims, demands or suits which she has or may have against all other persons, firms or corporations, other than those heretofore released, including, but not limited to, her claims and/or suits against Carl Jensen, J. E. Little, Newton F. Marsh, Constantino B. Sandino, L. L. Feidler, Jr. and C. W. Liedlich, all persons of the full age of majority and residents of the Parish of Orleans, State of Louisiana, all corporate officers, directors, and/or agents of Bethlehem Steel Company, together with other officers, directors, and/or agents of Bethlehem Steel Company whose names are presently unknown to the said Mrs. Roberta Kistner Crabtree.
"The American Insurance Company does by these presents agree to defend and indemnify Mrs. Roberta Kistner Crabtree against any and all liability or loss, up to but not beyond the sum paid to her herewith, that she may hereafter sustain on account of any claim, demand or suit of *547 Bethlehem Steel Company against her for recovery by or reimbursement to Bethlehem Steel Company, solely as a result of the within settlement, of the amount of workmen's compensation payments heretofore or hereafter actually paid to her by Bethlehem Steel Company because of the accidental death of the late Samuel J. Crabtree, it being understood and agreed that the foregoing obligation, herein undertaken by The American Insurance Company, is not and shall not be applicable to any claim, demand, intervention or suit of Bethlehem Steel Company against the said Mrs. Roberta Kistner Crabtree for recovery by or reimbursement to Bethlehem Steel Company of the amount of the aforementioned workmen's compensation payments on account of or out of any compromise settlement entered into by or judgment rendered in favor of Mrs. Roberta Kistner Crabtree in connection with any claims, demands or suits asserted or prosecuted by her against any person, joint venture or corporation, other than those hereby released, because of the death of the said Samuel J. Crabtree.
"It is further understood and agreed that this settlement is made by way of compromise and that the act of The American Insurance Company in effecting such settlement shall not be construed as an admission of liability on the part of any of the parties hereby released.
"IN WITNESS WHEREOF, the said Mrs. Roberta Kistner Crabtree and the said The American Insurance Company have executed these presents in quadruplicate originals, each being of equal dignity and effect, on this 7th day of January, 1969 in the presence of the undersigned competent witnesses."
On January 9, 1969, the following letter was addressed to Gerard M. Dillon, Attorney for American Insurance Company, by Cicero C. Sessions, Attorney for defendant:
"Thank you for your letter of January 7, 1969 with enclosures.
"Pursuant to our prior oral discussions relative to this matter, we confirm that we represent Bethlehem Steel Corporation in respect of the accidental death of Samuel J. Crabtree, fatally injured on or about May 13, 1963. We further confirm that under the Louisiana Workmens Compensation Law Bethlehem Steel Corporation has been paying weekly death benefits to plaintiff Mrs. Roberta Kistner Crabtree.
"The release and stipulation of dismissal of Civil Action No. 14545, Section `C', United States District Court, Eastern District of Louisiana, New Orleans Division, entitled `Roberta Kistner, widow of Samuel J. Crabtree vs. Insurance Company of North America, American Insurance Company and Chrysler Corporation' effects dismissal with prejudice as of compromise of that action by the plaintiff, Mrs. Crabtree, with reservations of her rights against other parties not parties to the action. The release to American Insurance Company is to the same effect.
"We are authorized to state hereby for Bethlehem Steel Corporation that it shall not seek indemnification or reimbursement by Mrs. Crabtree of workmens compensation death benefits and/or funeral benefits or other benefits paid by it as the employer of Samuel J. Crabtree, or any part of such benefits, solely from the settlement funds received by Mrs. Crabtree from American Insurance Company, or solely as a result of the settlement referred to in your letter of January 7, 1969.
"This undertaking in behalf of Bethlehem Steel Corporation is entirely without prejudice to and with full reservation of all of Bethlehem Steel Corporation's rights in all other respects, including, without limitation, the right of Bethlehem Steel Corporation to receive credit for and take credit for whatever further benefits are due Mrs. Crabtree under the workmens compensation law of Louisiana because of American Insurance Company's settlement with her, and her receipt of such third-party damage settlements. This includes without *548 limitation the right of Bethlehem Steel Corporation to terminate the payment of any further benefits whatever to Mrs. Crabtree."
On October 15, 1969, after Mrs. Crabtree had accepted American Insurance Company's draft for $15,000.00 and had endorsed same, she filed suit against Bethlehem Steel Corporation for alleged unpaid Workmen's Compensation in the sum of $3,955.00, plus penalties and attorney's fees. Defendant Bethlehem answered and averred:
"On January 10, 1969, the plaintiff entered into a settlement with the American Insurance Company whereby plaintiff received the sum of $15,000.00 cash in full settlement of all claims against American Insurance Company, Mason-Rust, Mason & Ranger-Silas Mason Co., Inc., The Rust Engineering Company, The Ross Corporation and all of their respective executive officers, directors, stockholders, agents and employees arising out of the accident of May 13, 1963 being the accident referred to and described in the suit entitled * * *.
"As a consequence of said settlement, the defendant herein became legally entitled to a credit against compensation to which plaintiff would otherwise be entitled to thereafter, of the amount received by plaintiff in said settlement, which amount was in excess of the total amount to which plaintiff would be entitled in compensation as a result of the death of her husband and, accordingly, defendant does not have any further liability to plaintiff as a result of the death of her husband."
Thereafter, plaintiff filed a supplemental and amended petition in which she alleged that the release supra was prepared with the knowledge and consent of defendant, and that defendant viewed and approved said agreement prior to its execution by her. She further alleged that Bethlehem Steel Corporation was bound by the terms and intent of the agreement and was legally obligated to pay her the remaining Workmen's Compensation allegedly due.
The trial court rendered judgment in favor of Mrs. Crabtree for Workmen's Compensation at the rate of $35.00 per week commencing January 10, 1969 and running for a period of 113 weeks, together with legal interest on all past due installments. It did not render written reasons for judgment but stated at the end of trial:
"A quick perusal of the exhibit marked P2 and D1, which is the release agreement between American Insurance Company and Mrs. Roberta Kistner Crabtree, indicates that the American agreed therein to indemnify Mrs. Crabtree for any amount which Bethlehem might seek to recover in indemnification for payments of workmen's compensation benefits to Mrs. Crabtree.
"The true issue in this case is whether or not this agreement comprehended solely and exclusively the 10,000 odd dollars already paid in compensation or whether in fact the agreement contemplated the indemnification for the total amount of compensation which might be paid to Mrs. Crabtree up to approximately the $14,000 figure for the death of her husband.
"Now, a quick reference to the language wherein American agreed to indemnify Mrs. Crabtree, in the event that Bethlehem should proceed against American for indemnification of their payments of workmen's compensation benefits, says, `Regarding the amount' and I'm quoting, `Demand or suit of Bethlehem Steel Company against her for recovery by/or reimbursement to Bethlehem Steel Company solely as a result of the within settlement of the amount of workmen's compensation heretofore or hereafter' and I emphasize `or hereafter', `actually paid to her by Bethlehem Steel Company, because of the accidental death of the late Samuel J. Crabtree,' et cetera.
"Now, construing all of the language embodied in that release, it would appear to me that there was not only contemplated the amounts paid in workmen's compensation before the date of the passage of the release as contemplated in the use of the *549 word `heretofore', but also the payments which might have been due after the effective date of the release under workmen's compensation allowed, to quote the alternative `hereafter' as embodied within that agreement.
"For this reason, I am inclined to believe that this release contemplated a continuation of payment of workmen's compensation to the full extent of liability imposed by law upon the comp carrier or the employer, and subject to that right of indemnification provided in the Comp Statute in favor of Bethlehem Company, and predicated upon the indemnification right which Mrs. Crabtree obtained by virtue of the release agreement which was entered into between herself and the American Insurance Company."
As stated supra, the Court of Appeal reversed the judgment of the trial court. The appellate court was convinced that when plaintiff settled her claim with American Insurance Company, defendant was entitled to stop further compensation payments and claim a credit for the amount left due. After an analysis of LSA-R.S. 23:1103, the Court concluded that the compromise agreement supra had no effect against defendant's right to assert and receive a credit for benefits not paid. It found no merit in plaintiff's claim that defendant was estopped to assert a credit due; the Court found no basis in equity or law precluding defendant's credit claim.
We granted Mrs. Crabtree's application for Certiorari. Herein, she assigns the following errors to the judgment of the Court of Appeal:
1. The Court was in error in holding that the indemnity agreement entered into between employee's widow and third party had no affect against defendant's right to assert and receive a credit for the benefits not paid, even though employer had knowledge and later acquiesced in said agreement.
2. The Court was in error when it held that LSA-R.S. 23:1101-1103 conferred upon the employer the right to proceeds obtained by employee's widow in settlement agreement with third party, without third party first being first adjudged to be a tortfeasor.
3. Court was in error in holding that LSA-R.S. 23:1101-1103 conferred rights upon employer directly against employee.
4. The Court was in error in failing to grant a re-hearing in light of the Supreme Court's decision of Vidrine v. Michigan Millers Mutual Insurance Company, 263 La. 300, 268 So.2d 233 (1972).
In the case of American Bank & T. Co. v. Trinity Universal Ins. Co., 251 La. 445, 205 So.2d 35 (1967) we said: "Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded upon good faith, the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence. * * *
"Since estoppel bars the normal assertion of rights, courts apply the doctrine cautiously. * * *"
In American Security Bank of Ville Platte v. Vidrine, 255 So.2d 140, 146 (1971), we held: "The general rule is that estoppels are not favored in our courts. Whenever estoppel is pleaded as an element of a cause of action, it must be pleaded specifically, and the burden of establishing the facts upon which the plea is predicated, as well as affirmatively showing that the pleader was misled and forced to act in his prejudice, rests upon the party invoking the doctrine. * * *"
The testimony of record indicates that the great concern of American Insurance *550 Company at the time it executed the release supra was that it did not want to be confronted with a suit for reimbursement of the approximately $10,000.00 previously paid to Mrs. Crabtree by Bethlehem Steel Corporation.[1]
Mrs. Crabtree testified that when she signed the release she inquired whether her Workmen's Compensation would continue. She said that she relied on it for her rent and testified: "Both Mr. Dillon and Mr. Bruno. Both of them said `no', that `that won't have any bearing at all on your workmen's compensation.'"
Frank S. Bruno, attorney for Mrs. Crabtree, testified that he assured Mrs. Crabtree that her Workmen's Compensation would in no way be affected by the execution of the release supra; such assurance was given prior to the signing of the release. He said that he had never been in contact with anyone from Bethlehem Steel Corporation prior to the execution of the release. Gerard Dillon, attorney for American Insurance Company, prepared the release which was signed by an official of the company and Mrs. Crabtree; Bruno said that he was unaware of any plan to stop the payment of compensation.
The record reflects that Bethlehem Steel Corporation was not a signatory to the release supra. Its intention at all times, as reflected by the letter supra from its attorney to Mr. Dillon, was to discontinue payment of Workmen's Compensation to Mrs. Crabtree after she received her settlement of $15,000.00. It carried out its intention on January 10, 1969, a few days after the release's execution.
Mrs. Crabtree and her attorney thought that compensation would continue after the execution of the release, but they made no effort to secure a statement in the document to that effect. The trial judge supra interpreted the agreement's terms to provide Mrs. Crabtree with future compensation, but a reading of the release discloses that its provisions are void of a recital to this effect. Under such circumstances, we do not find that Bethlehem Steel Corporation is estopped from claiming a credit in the instant suit. It is making a normal assertion of a right and should not be precluded from doing so. Mrs. Crabtree, despite her beliefs, has not borne the burden of establishing facts herein which show that estoppel is justified. Since Bethlehem was not a party to the release, Mrs. Crabtree has not shown that by signing the release she was forced to act to her prejudice.
LSA-R.S. 1101-1103 provide:
"When an injury for which compensation is payable under this Chapter has been sustained under circumstances creating in some person (in this Section referred to as third person) other than the employer a legal *551 liability to pay damages in respect thereto, the injured employee or his dependent may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the injured employee or his dependent against such third person, nor be regarded as establishing a measure of damages for the injury; and such injured employee or his dependent may obtain damages from or proceed at law against such third person to recover damages for the injury.
"Any employer having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to any injured employee or his dependent." LSA-R.S. 23:1101.
"If either the employee or his dependent, or the employer, brings suit against a third person as provided in R.S. 23:1101, he shall forthwith notify the other in writing of such fact and of the name of the court in which the suit is filed, and such other may intervene as party plaintiff in the suit." LSA-R.S. 23:1102.
"In the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in R.S. 23:1102, and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his favor; but if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent, and upon payment thereof to the employee or his dependent, the liability of the employer for compensation shall cease for such part of the compensation due, computed at six per cent per annum, and shall be satisfied by such payment.
"No compromise with such third person by either the employer or the injured employee or his dependent shall be binding upon or affect the rights of the others unless assented to by him." LSA-R.S. 23:1103.
In the very recent case of Vidrine v. Michigan Millers Mutual Insurance Co., 263 La. 300, 268 So.2d 233 (1972), we held on rehearing with respect to LSA-R.S. 23:1103 that:
"These provisions clearly permit recovery by any employer of the compensation payments made or due by him, and evidence an intent that in no case shall the employee be permitted dual recovery for his injuries, that is, recovery both from the tortfeasor in full and, in addition, from his employer in compensation. Indeed, in the original statute, if an employee availed himself of his right to compensation, only the employer had the right to bring action against the tortfeasor both for the payments made by him, and for any additional amounts due to the employee. An amendment in 1920 permitted either to bring the action, and allowed the other to join to urge his claim. As shown in Chauvin v. Louisiana Power & Light Co., 177 La. 193, 148 So. 23, `The only material difference between the old law and the new is that under the old law the right to collect the damage had to be exercised through the employer, the subrogee of the claim, whereas, under the law as amended, the right may be exercised by the injured employee personally.' (Emphasis added.)
"In neither of the above quoted sections is there any suggestion that the right to recover compensation actually paid or due is limited to those employers who are blameless, or innocent of any action which might have caused the injury. Furthermore, nothing in the sections creates a classification of employers into those who are at fault and those who are not. Any attempt *552 by this Court to create such a classification would amount to judicial statutory amendment."
Herein, the Court of Appeal, 258 So. 2d at p. 202, stated that it is well settled that where a surviving spouse settles a tort suit against a tortfeasor or third party who caused the employee's death and that settlement is in excess of workmen's compensation sought, an employer or his insurer is entitled to recover compensation payments made out of the amount of the tort recovery. We agree with this statement and extended it in Vidrine supra to hold that the employer is entitled to recover compensation whether he is negligent or blameless.
The facts of the case of Smith v. McDonough, La.App., 29 So.2d 818, Certiorari denied, are almost identical to those herein presented. Therein, the Court held that where an employee was injured under circumstances creating liability against a third party and compromised his claim against such third party without the knowledge of his employer, the employer was entitled to credit the amount of the compromise upon the larger amount awarded the employee in a subsequent suit against the employer by the employee for workmen's compensation. (Here, the employer has paid $10,000.00 and only claims a credit for approximately $4,000.00.) See Meyers v. Southwest Conference Ass'n of Seventh Day Adventist, La.App., 91 So.2d 106, Certiorari denied.
In Booth v. Travelers Insurance Co., La.App., 217 So.2d 483, Certiorari denied, 253 La. 869, 220 So.2d 456, the Court held that the Workmen's Compensation Law does not contemplate full double recovery by an injured employee in both tort and workmen's compensation, and the fact that the employer did not intervene in claimant's wrongful death, suit against a third-party tortfeasor did not entitle claimant to recover workmen's compensation benefits from the employer. (Plaintiff in Booth received $37,500.00 in the tort suit; she prayed for Workmen's Compensation in the sum of $14,000.00) See Geter v. Travelers Insurance Company of Hartford, La. App., 79 So.2d 120.
Under the above jurisprudence and statutory law, we conclude that the defendant employer Bethlehem Steel Corporation is entitled to the credit which it herein seeks. Viewing this matter as a whole, it is clear that American Insurance Company would have never executed the present settlement unless it was assured that Bethlehem Steel Corporation would not proceed against it for compensation paid by Bethlehem.
Bethlehem, out of a spirit of friendship and compassion towards plaintiff, agreed that it would not stand in the way of plaintiff's receiving her settlement from American. To permit plaintif to recover the amount she herein seeks would be to allow her double recoverysuch is against the intendment of the Workmen's Compensation Law as shown supra.[2]
A rehearing was granted in Vidrine supra, and our original decree was reversed. Assignment of Error No. 4 is therefore without merit.
For the reasons assigned, the judgment of the Court of Appeal, Fourth Circuit, is affirmed. All costs to be paid by plaintiff-applicant.
BARHAM, J., concurs.
TATE, J., dissents and assigns reasons.
DIXON, J., dissents.
*553 TATE, Justice (dissenting).
I respectfully dissent.
The plaintiff widow compromised her claim against a third-party tortfeasor and its insurer for $15,000 above and beyond compensation payments heretofore paid or hereafter to be paid by the defendant employer, Bethlehem Steel. Bethlehem Steel lost nothing by the compromise, which specifically did not affect it. See La.R.S. 23:1103: "* * * No compromise with such third person by either the employer or the injured employee or his dependent shall be binding upon or affect the rights of the others unless assented to by him."
A compromise is simply not a recovery of damages within the meaning of La.R.S. 23:1103, entitling an employer to share in the amounts involved. The cited statute specifically excepts, as quoted, a compromise from such apportionment; it instead provides that such compromise does not bind the employer.
This court, in holding otherwise, overlooks the primary purpose of our compensation act. This purpose is not to limit an employee's total recovery against tortfeasors; rather, the purpose of the act is to restrict the injured employee to the (often-inadequate) compensation award against the employer, in return for the employer's loss of defenses to liability against the injured employee.
The primary purpose of the act is to benefit injured employees, not to reimburse employers for workmen's compensation benefits paid out of amounts received by employees, except in the limited instances provided by La.R.S. 23:1101 (a direct suit by the employer against the tortfeasor) and 23:1103 (to share in the apportionment of "damages recovered" by suit).
The present does not fall within the statutory exceptions. The present defendant therefore still owes remaining compensation benefits due.
For these reasons, I dissent.

ON REHEARING
TATE, Justice.
The facts are fully stated in our opinion on original hearing. Pertinently to the issues before us, they are:
The widow Crabtree sues for the remaining workmen's compensation benefits due because of the death of her husband at work during 1963. Made defendant is Bethlehem, her husband's employer. Bethlehem had paid her weekly compensation of $35 until January 10, 1969, when it terminated benefits.
Bethlehem terminated compensation because the widow had received the sum of $15,000 in settlement of her suit in federal court against third-person tortfeasors. Bethlehem contends that it is not required to pay the remaining 104 weeks of compensation (about $4,000) because its liability therefor is extinguished by the proceeds received by the widow in compromise from the third persons.
The district court awarded the plaintiff widow the remaining weekly compensation due, but the court of appeal, one judge dissenting, reversed. 258 So.2d 199 (La.App. 4th Cir. 1972). On rehearing, we conclude that the trial court was correct in holding that Bethlehem could not receive credit against its remaining compensation liability to the widow for the sums received by her in compromise of her tort suit, of which Bethlehem had notice but in which it did not intervene.
The issue is one of first impression in this court. It involves the proper construction, with regard to the issue, of certain sections of our compensation act regulating the rights of the employer and the employee with regard to actions against a third person wrongdoer whose fault contributed to the employee's injury or death. La.R.S. 23:1101-03.
When an employee's work-injury creates in a third person "a legal liability in respect thereto", both employee and employer *554 may sue the third person to recover damages for the injury. Section 1101.[1] If either brings suit, he must notify the other, and the other may intervene as plaintiff in this suit. Section 1102.[2] In the event suit is brought by either "and damages are recovered, such damages shall be apportioned in the judgment" so that the employer's claim for reimbursement is accorded preference. Section 1103, first paragraph (italics supplied).[3]
The second paragraph of the cited Section 1103 contains this important provision: "No compromise with such third person by either the employer or the injured employee or his dependent shall be binding upon or affect the right of the others unless assented to by him."
The unambiguous meaning of this statutory language is: Either the employer or the employee may sue the third-person tortfeasor; but, if suit is brought, notice and an opportunity to intervene must be given the other. If judgment is awarded in the suit, the damages so awarded must be apportioned as required by the statute to give preference to the employer's reimbursement claim, at least if he has intervened. However, either employer or employee has the full right to compromise any claim he has against the third person, but any compromise will not affect the other's rights against the tortfeasor unless he has assented to it.
Bethlehem contends that, once suit is brought, the employer is entitled to receive credit against its compensation liability for any sums received by the employee in compromise, even though the employer has notice and does not intervene to protect its claim to reimbursement. This argument is based upon the first paragraph of Section 1103, quoted above, which provides for the employer's preferential right to be recognized in a judgment if "damages are recovered".
*555 The widow Crabtree argues that, instead, the issue is governed by the second paragraph of Section 1103, quoted above. This paragraph provides that any compromise with the third person entered into by either the employer or the employee shall not affect the other's rights, in the absence of his assent. Thus, she argues, her compromise with the third person did not affect any rights Bethlehem had to be reimbursed by the third personBethlehem lost nothing by her compromise and should gain nothing by it.
We think the widow is correct. In the face of the statutory classification, we are unable to agree with Bethlehem's contention that it makes no difference whether the injured employee or his survivors receives sums from third persons by judgment or compromise:
"A judgment is the determination of the rights of the parties in an action * * *." La.C.Civ.P. Art. 1841 (italics supplied). "A transaction or compromise is an agreement between two or more persons who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing. * * *" Civil Code Article 3071.
Although both of these legal characterizations may have the force of res judicata, La.C.Civ.P. Art. 1842, Civil Code Arts. 3078, 3556(31), they are distinguishable. In a tort suit, a judgment in favor of the plaintiff awards the full damages to which he is entitled. Ordinarily, by a compromise of a tort claim a plaintiff accepts less than the full damages suffered, and a defendant pays a sum not representing the full damages, each balancing the danger of losing against the hope of gaining all.[4]
Our construction of the statute is in accord with that reached in Richmond v. Employers Liability Assur. Corp., 31 So.2d 442 (La.App. 1st Cir. 1947), certiorari denied. In the few instances that an issue related to the present has arisen in the intermediate courts, this decision has never been overruled, although it has sometimes been distinguished or ignored. The decision's essential[5] reasoning is that sums received by way of compromise are not paid to satisfy "a legal liability to pay damages", La.R.S. 23:1101, so as to be under the statutory scheme subject to apportionment between the employer and the employee.
The uncontradicted facts introduced at the trial may illustrate the underlying reasons for this conclusion. In the instant case, the tort-caused damages awardable upon full tort recovery approximated $100,000. At the pre-trial conference in federal court (which led to a compromise of the tort claim for $15,000), the defendants' counsel estimated only a 10% chance of a favorable jury verdict, the plaintiff's counsel estimated a 40-50% chance, and the federal judge estimated the risk of judgment against the defendant as about 20%. Although initially wanting to settle the claim for $60,000, the plaintiff eventually accepted $15,000, about 15% of the actual damages. A factor in her counsel's reasoning was that this amount was free and clear of Bethlehem's claim for reimbursement of compensation paid.[6]
*556 Thus, in the instant case, the widow Crabtree does not receive any double recovery of actual damages suffered by her retaining the sums received in the tort compromise in addition to receiving the full workmen's compensation benefits due her by Bethlehem. Further, if Bethlehem had wished to intervene in the tort suit (with consequent exposure to the costs of litigation in a suit of doubtful outcome) in order to protect its rights to reimbursement, it could have done so.
Actually, Bethlehem lost no right it had to reimbursement by the compromise. Section 1103 expressly provides that such compromise entered into without its being a party to it did not bind it or affect its rights against the third-person tortfeasors. From the facts, we may also note that compromises entered into of this nature commonly involve full awareness by the employee, the employer, and the third person of the employer's right to reimbursement of compensation paid, with negotiation and action (or inaction) by these parties taking this factor fully into account.
The cases relied upon by Bethlehem can be factually distinguished: Booth v. Travelers Insurance Co., 217 So.2d 483 (La.App. 1st Cir. 1968) (employer's insurer did not intervene in tort suit because it was contesting any liability for workmen's compensation); Geter v. Travelers Insurance Co., 79 So.2d 120 (La.App. 1st Cir. 1955) (employer's insurer given credit because employee received full tort damages by judgment); Ford v. Kurtz, 46 So.2d 357 (La.App. 1st Cir. 1950) (employee filed suit and compromised it without notice to the employer); Smith v. McDonough, 29 So.2d 818 (La.App.Orl.1947) (employee entered into compromise without the employer having knowledge of tort claim).[7]
We prefer, however, to rest our holding upon our construction of the statutory enactment: that an employer cannot receive credit against its compensation liability for sums received by an employee through a compromise of a tort claim against a third person to which the employer is not a party, and which thus does not affect any right the employer has against the third person. This holding is especially applicable to instances such as the present, where the employer has notice of a tort suit filed by the employee and does not intervene to protect its rights to reimbursement.
For the reasons assigned, we set aside the judgment of the court of appeal, and we reinstate and affirm the judgment of the district court awarding the plaintiff the compensation benefits to which she is entitled.
Court of Appeal judgment set aside; District Court judgment reinstated and affirmed.
SUMMERS, J., concurs in the result.
DIXON, J., concurs.
MARCUS, J., dissents with assigned reasons.
MARCUS, Justice (dissenting).
I respectfully dissent.
I am of the opinion that to permit plaintiff to recover would allow double recovery contrary to the intent of the Louisiana Workmen's Compensation Act. The statute is clear in regard to the preferential treatment of the employer's claim for reimbursement for compensation in a judgment. R.S. 23:1103. The compromise of a claim with a third person should receive similar *557 treatment, and the statute so provides. The second paragraph of Section 1103 states:
"No compromise with such third person by either the employer or the injured employee or his dependent shall be binding upon or affect the rights of the others unless assented to by him."
Absent the assent of the other party, the compromise agreement shall not be binding upon or affect the rights of others. Therefore, defendant employer should be able to credit against its compensation liability the sums received by the employee in compromise. This would prevent double recovery in a compromised claim in the same manner as in a judgment.
NOTES
[1] Pertinent testimony of Gerard Dillon, attorney for American Insurance Company is as follows:

"There was absolutely no conversation with Mr. Bruno relative to termination of compensation. What Mr. Bruno was concerned about was that there would be a claim by Bethlehem for reimbursement out of the proceeds of any settlement of the compensation that had theretofore had been made by Bethlehem to Crabtree.
"* * *
"There was only one letter from Mr. Sessions, and there is a note in there relative to a telephone conversation that I had with Mr. Sessions which was the preliminary to the letter which he addressed to me. And I might add that you will find that the only thing that Mr. Bruno was interested in was indemnity against a claim by Bethlehem for reimbursement of the proceeds of the settlement of the compensation that had theretofore actually been paid to Mrs. Crabtree and which might thereafter actually be paid to Mrs. Crabtree solely because of the fact that as of the time of the settlement Mrs. Crabtree was still being paid compensation. And I might also further add that with respect to the release, you will find in the file a letter addressed to Mr. Bruno on January 3rd, as I recall, 1969, in which the release, four days prior to its execution, was delivered to Mr. Bruno and Mr. Bruno was asked to carefully check it and to determine whether he wanted any changes in it. Mr. Bruno requested no changes in the release."
[2] Article 3078 of LSA-C.C. provides that transactions have, between the interested parties, a force equal to the authority of things adjudged. They cannot be attacked on account of any error in law or any lesion. It could be said that the instant compromise has the authority of a thing adjudged and that plaintiff is in the same position as if she had received a judgment.
[1] La.R.S. 23:1101: "When an injury for which compensation is payable under this Chapter has been sustained under circumstances creating in some person (in this Section referred to as third person) other than the employer a legal liability to pay damages in respect thereto, the injured employee or his dependent may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the injured employee or his dependent against such third person, nor be regarded as establishing a measure of damages for the injury; and such injured employee or his dependent may obtain damages from or proceed at law against such third person to recover damages for the injury.

"Any employer having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to any injured employee or his dependent."
[2] La.R.S. 23:1102: "If either the employee or his dependent, or the employer, brings suit against a third person as provided in R.S. 23:1101, he shall forthwith notify the other in writing of such fact and of the name of the court in which the suit is filed, and such other may intervene as party plaintiff in the suit."
[3] La.R.S. 23:1103 provides in full:

"[1] In the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in R.S. 23:1102, and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his favor; but if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent, and upon payment thereof to the employee or his dependent, the liability of the employer for compensation shall cease for such part of the compensation due, computed at six per cent per annum, and shall be satisfied by such payment.
"[2] No compormise with such trial person by either the employer or the injured employee or his dependent shall be binding upon or affect the rights of the others unless assented to by him." (As amended by Act 109 of 1958, which deleted the employer's former right to recover attorney's fees additional to the sums actually paid.)
[4] Thus, the instant compromise settlement concludes: "It is further understood and agreed that this settlement is made by way of compromise and that the act of The American Insurance Company in effecting such settlement shall not be construed as an admission of liability on the part of any of the parties hereby released."
[5] See the dissent of Judge Dore, the eminent organ of the court in Richmond, in the first of the cases distinguishing it so as to avoid the application of its reasoning. Ford v. Kurtz, 46 So.2d 357, 361 (La.App. 1st Cir. 1950).
[6] Her counsel caused to be inserted in the compromise an agreement by the third persons' insurer that it agreed to defend and indemnify her against any claim by Bethlehem for "workmen's compensation payments heretofore or hereafter actually paid to her." (Italics ours.) At the time, Bethlehem was and had been paying her compensation without demur. As the opinion on original hearing shows, the compromising insurer entered into the compromise after side-negotiations with Bethlehem (to which the plaintiff was not a party) concerning any claim by Bethlehem against it. Bethlehem's brief in this court states that the insurer forwarded to it a copy of the widow's release immediately after its execution.
[7] In Meyers v. Southwest Region Conference Assn., 91 So.2d 106 (La.App.Orl.1956), the plaintiff employee contested only the allowance to the employer of credit for the attorney's fees he had expended in securing the tort compromise.