AMERICAN MARINE UNDERWRIT-
ERS, INC., Plaintiff-Appellee,

v.

Newton Trent HOLLOWAY, et
al., Defendants,

v.

C & G MARINE SERVICES, INC.,
Defendant-Appellant.

No. 86–3650.

United States Court of Appeals,
Fifth Circuit.

Sept. 18, 1987.

John F. Emmett, Emmett, Cobb, Waits &
Kessenich, New Orleans, La., for defend-
ant-appellant.

Michael Magner, James M. Tompkins,
New Orleans, La., for plaintiff-appellee.

Before RANDALL, GARWOOD and
DAVIS, Circuit Judges.

PER CURIAM:

C & G Marine Services, Inc. (C & G),
appeals an adverse ruling in which the dis-
trict court granted summary judgment in
favor of C & G's insurer in an insurance
contract dispute. We affirm.

I.

Newton Holloway filed a maritime per-
sonal injury action against C & G and Con-
tinental Oil Company (Conoco). C & G had
two liability insurers, Employer's Insur-
ance of Wausau, managed by American
Marine Underwriters (AMU/Wausau) and
Glacier General Assurance Co. (Glacier).
Prior to trial, AMU/Wausau, Glacier and
Conoco negotiated a settlement with Hollo-
way. Under that agreement, Holloway
was to receive $215,000, $107,500 from Co-
noco and $107,500 from C & G's insurers.

After the settlement was bound but be-
fore the funds were distributed, one of C &
G's insurers, Glacier, was ordered into liq-
uidation. AMU/Wausau contended that its
insurance policy required it to pay only 60%
($64,500) of C & G's portion of the settle-

ment; as a result, C & G paid the remaining 40% ($44,003.43) and filed this suit against AMU/Wausau to recoup its payment.

## II.

C & G, through its broker, Edward Brennan, obtained protection and indemnity insurance on its fleet of vessels in a novel manner. This liability coverage, with limits of $500,000 per occurrence, was insured in two separate policies issued by two different insurers. The appellee, AMU/Wausau, in its policy assumed 60% of C & G's liability and Glacier in a separate policy assumed 40% of the risk. The policy provision at issue here provides:

ENDORSEMENT No. 6

It is hereby understood and agreed that the Employers Insurance of Wausau insures 60% P/O 100% of each vessel on the Schedule of Vessels insured hereunder.[1]

When Glacier became insolvent, the insured, C & G, contends that AMU/Wausau was obligated to pay the entire settlement sum. C & G argues that the only effect of the above endorsement in AMU/Wausau's policy is to reduce the insurer's total exposure for any one occurrence to 60% of the total $500,000 limit, or $300,000. Because C & G's $107,500 agreed contribution to the Holloway settlement was less than that amount, C & G asserts that AMU/Wausau was required to pay C & G's entire contribution. In sum, C & G asserts that the 60/40 division of its coverage between AMU/Wausau and Glacier may give rights to the insurers against each other if one pays more on a claim than the portion of the risk it assumed; but the only effect the disputed clause had on C & G was to define the portion of the $500,000 limit of liability each insurer had.

AMU/Wausau, on the other hand, argues that its assumption of "60% P/O 100%" of the C & G risk has two consequences: (1) the clause limits its exposure to 60% of C & G's liability for any claim regardless of amount. For example, if C & G owed $100,000 on a claim arising out of an accident or occurrence, AMU/Wausau contends that its share of C & G's debt is $60,000 and the insured is required to look to Glacier for the remaining $40,000; (2) it limits AMU/Wausau's maximum limit of liability per occurrence to 60% of $500,000 or $300,000. For example, on a million dollar judgment rendered against C & G on a single occurrence, AMU/Wausau would pay $300,000. As indicated above, C & G agrees with AMU/Wausau that the clause has this effect.

## III.

Both parties filed motions for summary judgment and argued that the policy issued by AMU/Wausau was not ambiguous, no issues of material fact were presented, and they were entitled to judgment as a matter of law. The district court, applying Louisiana law, held that the policy was unambiguous and only required AMU/Wausau to pay 60% of the agreed settlement; accordingly, the court granted AMU/Wausau's motion for summary judgment and dismissed C & G's suit.

C & G argues on appeal that: (1) the district court erred in holding that the policy requires AMU/Wausau to pay only 60% of its loss; (2) AMU/Wausau is liable in solido with Glacier and therefore was obliged to pay C & G's entire portion of the settlement; and (3) AMU/Wausau is estopped from denying that it is indebted for

---

1. Endorsement No. 11 provides:

Endorsement No. 11

| VESSEL | LIMIT OF LIABILITY | CARGO LEGAL LIABILITY | DEDUCTIBLE | PRO-RATA PREMIUM |
|---|---|---|---|---|
| "Ms. Deborah" | $500,000 | $100,000 | $1,000/2,500 | $1,922.13 |
| | | | HERETO 60% = | $1,153.28 |

Endorsements 7, 12 and 14 contain similar statements for other named vessels.

the loss incurred by C & G. We consider each argument in turn.

## IV.

### A.

C & G argues that the district court erred in holding that AMU/Wausau's policy is unambiguous and only requires it to pay 60% of C & G's loss. Specifically, C & G argues that the policy is ambiguous as to the amount of coverage AMU/Wausau provided for a single claim for less than $500,-000.

■ Whether an insurance policy is ambiguous is a question of law for the court. *Diversified Group, Inc. v. Van Tassel*, 806 F.2d 1275, 1277 (5th Cir.1987). In making this determination, the court should give the words in the contract their plain ordinary meaning. *Carney v. American Fire & Indem. Co.*, 371 So.2d 815, 818 (La.1979). *See also* McKenzie & Johnson, Louisiana Civil Law Treatise: Insurance Law & Practice § 4 at 6–7 (1986).

The dispute between the parties is a narrow one. C & G and AMU/Wausau agree that the term "60% P/O 100%" in Endorsement No. 6 means 60% part of 100% and that this endorsement reduces AMU/Wausau's total exposure for any one occurrence to 60% of $500,000 or $300,000. Their disagreement thus narrows to whether the 60% limitation applies to any claim regardless of amount as argued by AMU/Wausau or whether the 60% limitation applies only to reduce AMU/Wausau's ultimate limit of liability from $500,000 to $300,000. In practical application the dispute is material on any claim for less than $500,000. For example, if the claim is for $100,000, AMU/Wausau argues it owes only 60% of that sum or $60,000; C & G contends AMU/Wausau owes the entire amount.

■ For the following reasons we agree with the district court that the policy is not ambiguous and limits AMU/Wausau's liability to 60% of any claim against C & G regardless of the amount. First, the policy contains no words limiting the application of the "60% P/O 100%" to the determination of the ultimate limit of AMU/Wausau's liability. In the absence of such limiting language the ordinary meaning we attach to the phrase is that the fractional coverage applies across the board to any claim. Second, our review of the policy reveals no language which relates the 60% P/O 100% to AMU/Wausau's rights against another insurer. In fact, the policy does not require C & G to insure the remaining 40% of the risk. Thus, AMU/Wausau accepted 60% of the risk and C & G had the option of remaining self-insured for the remaining 40% or placing that portion of the 40% risk with another insurer.

Finally, the premium AMU/Wausau charged C & G is more consistent with AMU/Wausau's interpretation of the policy. The policy shows, as to the M/V MS. DEBORAH, the total premium due if AMU/Wausau had insured 100% of the liability arising from that vessel's operations.[2] The policy then reflects AMU/Wausau's actual premium charge of 60% of that sum. It is reasonable to infer that the parties intended that AMU/Wausau's obligation to pay claims would have a limitation that corresponds with the reduced premium AMU/Wausau charged for coverage. It is not reasonable to assume that AMU/Wausau bargained to cover 100% of C & G's losses up to $300,000 per occurrence for 60% of the usual premium charge for full coverage. It is much more reasonable to interpret the bargain as one in which AMU/Wausau was obliged to pay 60% of each claim—across the board and regardless of amount—in return for 60% of the usual premium for full coverage. For these reasons, we are persuaded that the district court correctly interpreted the policy.

### B.

C & G next argues that AMU/Wausau is liable in solido with Glacier and that with Glacier's insolvency, AMU/Wausau must make C & G's entire contribution to the

---

2. See footnote 1, *supra*.

settlement. The predicates for in solido liability were set forth by the Louisiana Supreme Court in *Narcise v. Illinois C. G. RR,* 427 So.2d 1192, 1194–95 (La.1983).

The co-extensive obligations for the "same thing" create the solidarity of the obligations. When it is not clear that the parties are all obliged to do the same thing (as in the case of an agreement by several parties to repay a loan), then an obligation in solido is not presumed and must be expressly stipulated.... However, when it is entirely clear that the parties are all obliged to do the same thing (as when the law requires each of two or more parties to pay tort damages concurrently caused by each party), then there is an obligation in solido by definition, as a matter of law, and there is no need to presume solidarity.... It is the co-extensiveness of the obligations for the same debt, and not the source of liability, that determine the solidarity of the obligation.

■ As we interpret the insurance policy, AMU/Wausau and Glacier are not co-extensively liable for the *same* debt. AMU/Wausau insured 60% of the risk and Glacier covered the remaining 40%. Therefore, AMU/Wausau and Glacier are not solidary debtors and AMU/Wausau is not responsible for Glacier's share of the debt.

## C.

We likewise reject C & G's argument that AMU/Wausau is estopped from denying coverage for the portion of the settlement paid by C & G. C & G cites *Employers Mutual Liability Ins. Co. v. Sears, Roebuck & Co.,* 621 F.2d 746 (5th Cir.1980) for the principle that when an insurer assumes the insured's defense without reservation, the insurer is estopped from denying coverage.

In *Employers Mutual* the insurer defended the additional insured, Sears, against a products liability suit under circumstances that led Sears to believe that the insurer would provide full coverage to Sears for liability arising out of the suit. After Sears assisted the insurer in defending the suit, and after the plaintiff obtained a judgment, the insurer for the first time informed Sears that the policy did not afford coverage.

■ *Employers Mutual* is readily distinguishable from the instant case. AMU/Wausau consistently asserted that it would pay only 60% of the agreed settlement; it never gave C & G reason to believe that it would afford full coverage and pay 100% of the loss. "Equitable estoppel is designed to foster justice by preventing a person from taking a position contrary to his prior conduct, which has been detrimentally relied upon by another person." *Bossier City v. Usery,* 356 So.2d 1099, 1101 (La.App.1978). *See also American Bank & Trust Co. v. Trinity Universal Ins. Co.,* 251 La. 445, 205 So.2d 35, 40–41 (1967); *Cudahy Foods Co. v. Rich Plan, Inc.,* 349 So.2d 894, 895–96 (La.App.1977).

AMU/Wausau is not estopped to assert that it covers only 60% of the loss in this case.

AFFIRMED.